# Exhibit A

Case #2019-25931

| | |
|---|---|
| **Case Number** | 2019-25931 |
| **Commencement Date** | 11/4/2019 |
| **Case Type** | Complaint Civil Action |
| **PFA Number** | |
| **Caption Plaintiff** | THE DISTRICT ATTORNEY OF MONTGOMERY COUNTY |
| **Caption Defendant** | JUUL LABS INC A DELAWARE CORP |
| **Lis Pendens Indicator** | No |
| **Status** | 2 - OPEN |
| **Judge** | ROTHSTEIN |
| **Remarks** | |
| **Sealed** | No |
| **Interpreter Needed** | |

## Plaintiffs

| Name | Address | Country | Counsel | Notify | Sequence |
|---|---|---|---|---|---|
| THE DISTRICT ATTORNEY OF MONTGOMERY COUNTY | 2 EAST AIRY STREET 4TH FLOOR NORRISTOWN, PA 19401 UNITED STATES | UNITED STATES | HOWARD, PATRICK | Yes | 1 |

## Defendants

| Name | Address | Country | Counsel | Notify | Sequence |
|---|---|---|---|---|---|
| JUUL LABS INC A DELAWARE CORP | 560 20TH STREET SAN FRANCISCO, CA 94107 UNITED STATES | UNITED STATES | | Yes | 1 |
| GURU KOP INC ( D/B/A PANTRY 1 FOOD MART) | 207 NORTH HENDERSON ROAD KING OF PRUSSIA, PA 19406 UNITED STATES | UNITED STATES | | Yes | 2 |
| MARKET 24 LLC | 1701 MARKLEY STREET NORRISTOWN, PA 19401 UNITED STATES | UNITED STATES | | Yes | 3 |

## Docket Entries

| Seq. | | Filing Date | Docket Type | Docket Text | Sealed | Filing ID |
|---|---|---|---|---|---|---|
| 0 | E | 11/4/2019 | Complaint Civil Action | | No | 12542662 |
| 1 | | 11/18/2019 | (Internal Use Only) Served | GURU KOP INC DBA PANTRY 1 FOOD MART ON 11/14/2019 | No | 12559622 |
| 2 | E | 11/18/2019 | Affidavit/Certificate of Service of | COMPLAINT ON 11/14/2019 TO JUUL LABS, INC. | No | 12560667 |
| 3 | | 11/20/2019 | (Internal Use Only) Not Found as to | MARKET 24 LLC ON 11/19/2019 | No | 12564480 |
| 4 | E | 12/11/2019 | Praec to Reinstate | | No | 12591012 |

0

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

THE DISTRICT ATTORNEY OF MONTGOMERY COUNTY

vs.

JUUL LABS INC A DELAWARE CORP

NO. 2019-25931

## NOTICE TO DEFEND - CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY  BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

THE DISTRICT ATTORNEY OF MONTGOMERY COUNTY

vs.

JUUL LABS INC A DELAWARE CORP

NO.  2019-25931

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document <u>commencing an action</u> in the Montgomery County Court of Common Pleas.  The information provided herein is used solely as  an aid in tracking cases in the court system.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney:   PATRICK HOWARD, Esq., ID: 88572

Self-Represented (Pro Se) Litigant ☐

**Class Action Suit**         ☐ Yes     ☒ No

**MDJ Appeal**         ☐ Yes     ☒ No          <u>**Money Damages Requested**</u> ☒

<u>**Commencement of Action**</u>:          <u>**Amount in Controversy**</u>:

Complaint          More than $50,000

## Case Type and Code

Miscellaneous: _____

Other _____

**Other:**          VIOLATION OF UTPCPL, 73 PS SEC 201-9.1 ET SEQ. / PUBLIC

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## IN THE COURT OF COMMON PLEAS
## OF MONTGOMERY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| THE DISTRICT ATTORNEY OF<br>MONTGOMERY COUNTY,<br>Kevin R. Steele<br>Office of District Attorney<br>2 East Airy Street<br>4th Floor<br>Norristown, PA 19401 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |
| Plaintiff, | : | **CIVIL CASE NO. :** |
| v. | : <br> : <br> : | |
| JUUL LABS, INC., a Delaware corporation,<br>560 20th Street<br>San Francisco, CA 94107 | : <br> : <br> : | **NON-JURY TRIAL** |
| and | : <br> : | |
| MARKET 24, LLC<br>1701 Markley Street<br>Norristown, PA 19401 | : <br> : <br> : | |
| and | : <br> : | |
| GURU KOP, INC. D/B/A PANTRY 1<br>FOOD MART<br>207 North Henderson Road<br>King of Prussia, PA 19406 | : <br> : <br> : <br> : | |
| Defendants. | : | |

## COMPLAINT

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Plaintiff, the District Attorney of Montgomery County, in the name of the Commonwealth of Pennsylvania, brings this Civil Action Complaint against Defendants JUUL LABS, INC. ("JUUL"), MARKET 24, LLC, and GURU KOP, INC., d/b/a/ PANTRY 1 FOOD MART for disgorgement, restitution, civil penalties and injunctive relief arising from Defendants' violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 – 201-9.3, ("UTPCPL") and abatement of the public nuisance Defendants created in Montgomery County, and alleges as follows:

## INTRODUCTION

1. The tobacco industry has preyed on America's youth for decades, aggressively promoting tobacco products using tactics designed to appeal to children. The goal of its marketing campaign was simple: recruit new users at a young age, get them addicted to their product, and create life-long patrons. But while Big Tobacco[1] companies reaped billions of dollars in profits off addicting America's youth to cigarettes, smoking became a public health epidemic acknowledged by the United States Surgeon General in the 1960s, leading to widespread death and disease, pain and suffering, and massive amounts in healthcare costs. Beginning in the late 1990s, adolescent smoking rates finally began to fall. This was not, of course, because nicotine became any less addictive or because tobacco companies stopped preying on America's youth. Instead, it took years of legal battles and government regulation to remove Big Tobacco's reach into youth populations.

2. While falling addiction rates would be viewed as a remarkable accomplishment by any objective measure, JUUL saw it as a business opportunity. In June 2015, JUUL sought to

---

[1] "Big Tobacco" is a name used to refer to the "big five" largest global tobacco industry companies which are Philip Morris International, British American Tobacco, Imperial Brands, Japan Tobacco International, and China Tobacco. *See* https://en.wikipedia.org/wiki/Big_Tobacco.

2

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

fill the void left by Big Tobacco by introducing a new-age electronic cigarette that is so addictive it led to the "largest ever recorded [increase in substance abuse] in the past 43 years for any adolescent substance used in the U.S."[2] By utilizing new technologies and social media, JUUL picked up right where the Big Tobacco companies left off.

3.      First, JUUL developed a nicotine-delivery product even more addictive than traditional cigarettes. Nicotine itself affects brain development, attention, cognition, and raises the risk of addiction to other dangerous drugs. According to the National Institute on Drug Abuse, nicotine acts directly on the neurotransmitter dopamine, causing a dependence similar to heroin and other deadly opiates that have decimated American communities.[3] Due to JUUL's innovative high-quality, rapid nicotine delivery system, the nicotine is even more potent than the nicotine in traditional cigarettes, which is even more pronounced when used by minors.  As a result, JUUL has turned a generation of minors into addicts, constantly craving their next hit of nicotine. And while traditional cigarette smoke leaves an odor and is easily detectible, the JUUL nicotine pods came in sweet flavors and produce an odorless cloud, so it can be inhaled almost anywhere and easily hidden from teachers and parents.

4.      Next, JUUL launched a massive online and social media advertising campaign. Because social media platforms (Instagram, Twitter, Facebook), are primarily used by adolescents, JUUL was able to easily target and manipulate youth by using advertisements designed to fulfill powerful psychological needs like popularity, peer acceptance, and a positive self-image. JUUL's advertisements consistently display glamorous young models using JUUL

---

[2] Vaping Surges: Largest Year-to-Year Increase in Substance Use Ever Recorded in the U.S. for 10th and 12th Grade Students, University of Michigan Institute for Social Research (Dec. 17, 2018), https://isr.umich.edu/news-events/news-releases/national-adolescent-drug-trends-in-2018/.

[3] See https://www.drugabuse.gov/publications/brain-power/grades-6-9/legal-doesn%27t-mean-harmless-module-2/background.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

products while partying. Additionally, JUUL saturated social media feeds with advertisements, hashtags, and paid influencers to promote JUUL's sleek new product.

5.      JUUL's predatory strategies were so obvious the United States Food and Drug Administration ("FDA") raided JUUL's headquarters in September 2018 for documents concerning its "sales and marketing practices," particularly in regard to the marketing of e-cigarettes to minors.[4]

6.      In response, JUUL "shut down" its social media accounts and promised to stop selling flavored nicotine pods. JUUL's promises, however, have proven empty. Its social media campaign remains active and JUUL still sells mint and menthol flavored nicotine. Moreover, to a large extent the damage is already done. JUUL's deceptive and negligent practices have already led to widespread adolescent nicotine addiction, which can only be undone through expensive anti-addiction and cessation treatment.  As of October 8, 2019, the Center for Disease Control ("CDC") reports over 1,000 lung-injury cases related to vaping have occurred in 49 states and 26 deaths have been confirmed in 21 states – including one in Pennsylvania.[5]

7.      Now, JUUL controls nearly 75% of the e-cigarette market.[6] However, it is changing course and attempting to brand itself as a "safe" alternative to smoking and as a means to stop smoking traditional cigarettes. JUUL's attempt to rewrite its history is nothing more than a facade, promulgating a false narrative designed to lure adults already addicted to nicotine and vulnerable minors who have no understanding of the lifelong, adverse health consequences of nicotine addiction. In December 2018, Altria, the corporate conglomerate formerly known as

---

[4] https://www.nytimes.com/2018/10/02/health/juul-ecigarettes-fda-raid.html.

[5] https://www.cdc.gov/tobacco/basic_information/e-cigarettes/severe-lung-disease.html.

[6] https://www.cnbc.com/2018/07/02/juul-e-cigarette-sales-have-surged-over-the-past-year.html.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Phillip Morris—one of the world's largest producers and marketers of tobacco cigarettes—purchased a 35% ownership stake in JUUL for approximately $12.8 billion. As such, JUUL is now backed, owned, emboldened, and beholden to Big Tobacco.

8.    Since 1989 the Commonwealth of Pennsylvania has conducted the Pennsylvania Youth Survey ("PAYS"), a survey of school students in the 6th, 8th, 10th and 12th grades to learn about their behavior, attitudes and knowledge concerning alcohol, tobacco, other drugs and violence.[7] Last conducted in 2017, the PAYS data indicates that 16.3% of Pennsylvania students had vaped in the previous 30 days.[8] More specifically, 25% of all high school students and nearly 7% of all middle school students in Pennsylvania had vaped within the previous 30 days. For senior high school students in Montgomery County that number increases to 32.3%.[9]

9.    Dr. Rachel Levine, Pennsylvania's Secretary of Health, characterizes the rapid increase in e-cigarette use by Pennsylvania youth as an "epidemic" and called on all public health officials to work together to "stem that tide."[10]

10.    Montgomery County, through its Office of Drug and Alcohol, has established a website titled Youth Vaping Prevention Resources,[11] which includes a Vaping ToolKit, a resource for schools, parents, educators, and health care providers to assist them in understanding e-cigarettes and the dangers they pose.

11.    Due to rising concerns about JUUL and vaping, one Montgomery County school district, Upper Dublin, took the unusual step in March 2018 of banning all USB drives after officials became aware that some students were using their school-provided laptops to charge

---

[7] *See* https://www.pccd.pa.gov/Juvenile-Justice/Pages/Pennsylvania-Youth-Survey-(PAYS).aspx.

[8] Pennsylvania Youth Survey (PAYS) 2017.

[9] *Id.*

[10] https://local21news.com/news/local/how-pennsylvania-plans-to-stop-youth-vaping.

[11] https://www.montcopa.org/3271/Youth-Vaping-Prevention-Resources.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

JUUL products. "They do look very much like flash drives," said Deborah Wheeler, superintendent of the 4,100-student school district.[12]

12.      The District Attorney of Montgomery County brings this action to hold Defendant JUUL, and those entities—co-Defendants MARKET 24, LLC and GURU KOP, INC.—who the Federal Drug Administration ("FDA") confirmed to have illegally sold JUUL to minors in Montgomery County, accountable under the UTPCPL for their role in creating and perpetrating this public health crisis.  The District Attorney seeks disgorgement of the revenues acquired by Defendants through their marketing tactics and illegal sales to minors in the County.  The District Attorney also seeks disgorgement, restitution, civil penalties, injunctive relief, as well as restitution to fund addiction treatment along with community and educational outreach programs to abate the public nuisance JUUL has caused.

## **PARTIES**

13.      Plaintiff is the District Attorney of Montgomery County, Pennsylvania, who brings this action pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1-201-9.3.

14.      The District Attorney is expressly authorized to bring this action under the UTPCPL whenever the District Attorney has reason to believe that any person is using or is about to use any method, act, or practice declared by the UTPCPL to be unlawful, and that such proceedings would be in the public interest.  73 P.S.§ 201-4; § 201-8(b).

15.      Based on the allegations in this Complaint, the District Attorney has considerable reason to believe that that Defendants have used, and will continue to use, methods, acts, and/or

---

[12] https://www.inquirer.com/philly/health/kids-families/juuls-juuling-vaping-electronic-cigarettes-flavor-pods-mango-health-20180313.html.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

practices declared by the UTPCPL to be unlawful and is bringing this action for the public's benefit.

16.      Defendant, JUUL LABS, INC., is a corporation existing under the laws of the State of Delaware, with its principal place of business located at 560 20th Street, San Francisco, California 94107. JUUL was formerly known as Ploom Products, Inc. and Pax Labs, Inc.

17.      Defendant, MARKET 24, LLC, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania located at 1701 Markley Street, Norristown, Montgomery County, PA 19401.

18.      Defendant, GURU KOP, INC d/b/a PANTRY 1 FOOD MART, is a company organized and existing under the laws of the Commonwealth of Pennsylvania located at 207 North Henderson Road, King of Prussia, Montgomery County, PA 19406.

19.      In the largest coordinated enforcement effort in the FDA's history, in the summer of 2018 the agency issued more than 1,300 warning letters and civil monetary penalties (fines) to retailers who illegally sold JUUL and other e-cigarette products to minors during a nationwide, undercover blitz of brick-and-mortar and online stores.

20.      Defendant, MARKET 24, LLC was inspected by the FDA on June 29, 2018, and determined it illegally sold JUUL products to minors. On July 12, 2018, the FDA issued a civil monetary penalty to MARKET 24.

21.      Defendant, GURU KOP, INC., was inspected by the FDA during the summer of 2018, and discovered to have illegally sold JUUL to minors and, consequently, was issued a civil monetary penalty.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## JURISDICTION AND VENUE

22.     This Court has original jurisdiction over this action pursuant to § 931 of the Judicial Code, 42 Pa. C.S.A. § 931(a).

23.     Venue is proper with the Court pursuant to Pa. R. Civ. P. 1006(c)(1).

24.     JUUL's e-cigarette products were marketed, distributed and sold within Montgomery County, Pennsylvania by the Defendants.

## FACTUAL ALLEGATIONS

**I.      History of Tobacco Litigation and Regulation Leading to the Prohibition of Advertising and Marketing to Minors**

25.     The tobacco industry as a whole has a sordid history of deceptive marketing that made it one of the most profitable industries in the world. Since the late 19th and early 20th centuries, tobacco companies have wrongly used advertisements to market their products to adolescent users. Over the last 75 years, however, litigation and regulation have effectively led to the prohibition of advertising and marketing cigarettes to minors.

26.     Beginning in the 1950s, individuals began bringing personal injury and wrongful death claims against tobacco companies. In the 1960s, the U.S. Surgeon General began reporting on the health dangers associated with smoking. In response, the United States Congress passed the Federal Cigarette Labeling and Advertising Act in 1965, requiring the surgeon general's warning on every cigarette pack. In 1971, all broadcast advertising on television and radio for cigarettes was banned by Congress pursuant to the Public Health Cigarette Smoking Act. Despite these legislative efforts, smoking remained rampant.

27.     In March 1994, the U.S. Surgeon General reported on the impact that tobacco related advertising and promotional activities has on tobacco consumption by minors. The surgeon general found, among other things, that the use of human models and cartoon characters

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

in cigarette advertisements conveyed themes that appealed to young people.[13] In a separate 1994 consensus study by the National Academies of Science, Engineering, and Medicine, various themes used by tobacco companies to market to minors were studied. The report ultimately recommended forbidding the use of images and pictures which encouraged adolescent use, and allowing only text without slogans, scenes, or colors, because these marketing techniques encourage adolescent use.

28.    From 1994 through 1997, Attorneys General across the United States filed civil lawsuits against the tobacco industry to recover tobacco-related-health-care costs caused by rampant smoking, including those from Alabama, Alaska, California, Colorado, Connecticut, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Texas, Utah, Washington, and West Virginia.

29.    In 1998, a settlement agreement was reached between the tobacco industry and individual states. The Tobacco Master Settlement Agreement ("MSA"), required cigarette companies to pay $368.5 billion over 25 years to compensate states for the costs of treating smoking-related illness, finance nationwide anti-smoking programs, and to underwrite healthcare for millions of uninsured children. The MSA was designed to forever change the way cigarettes are marketed in the United States by banning various marketing practices that targeted individuals under 18 years old.[14]

---

[13] Preventing Tobacco Use Among Young People: A report of the Surgeon General, Centers for Disease Control and Prevention (Mar. 11, 1994), https://www.cdc.gov/mmwr/pdf/rr/rr4304.pdf.

[14] *See* https://www.nytimes.com/1997/06/21/us/cigarette-makers-in-a-368-billion-accord-to-curb-lawsuits-and-curtail-marketing.html.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

30.      In 2006, the United States District Court for the District of Columbia found that major U.S. cigarette companies, including Phillip Morris (now Altria, JUUL's largest shareholder), had violated the MSA by: (1) fraudulently claiming that "low tar" and "light" cigarettes were less harmful when the companies knew they were not, and (2) by marketing their products to children.[15]

31.      In 2009, President Barack Obama signed into law the Family Smoking Prevention and Tobacco Control Act ("FSPTCA"), which: (i.) limits the use of color on tobacco advertisements; (ii.) limits advertising in publications with significant teen readership to black text on white background only; (iii.) establishes 18 as a federal nationwide minimum age for legal cigarette and smokeless tobacco sales; and (iv.) prohibits the use of terms such as "light," "mild," and "low-tar" on tobacco product packages and advertisements.[16] When drafting the FSPTCA, Congress identified a number of relevant findings, including:

a.   Reducing the use of tobacco by minors by 50% would prevent well over 10,000,000 children from becoming regular, daily smokers, saving over 3,000,000 of them from premature tobacco-induced death. Such a reduction in youth smoking would also result in approximately $75 million in savings attributable to reduced health care costs;

b.   Advertising, marketing, and promotion of tobacco products have been directed to attract minors to using tobacco products, and these efforts have resulted in increased use of such products by minors;

c.   The use of tobacco products in motion pictures and other mass media glamorizes its use for minors and encourages them to use tobacco products;

d.   Minors are more susceptible to advertisements promoting reduced cigarette prices; and

e.   Minors   are   generally   more   influenced   by   tobacco

---

[15] *See United States v. Phillip Morris USA, Inc.*, 9 F. Supp. 2d 1 (D.D.C. 2006).

[16] 21 U.S.C. § 301, *et seq.*

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

marketing than adults.[17]

32.     Due to the above-referenced litigation and regulation, the tobacco's industry advertising practices for traditional cigarettes have been severely restrained. Consequently, cigarette use amongst 12th graders plummeted from 24.6% in 1997 to 5.5% in 2015.[18]

## II.     E-Cigarettes

### A.     *The Electronic Nicotine Delivery System.*

33.     Electronic nicotine delivery systems ("ENDS"), commonly referred to as e-cigarettes, are hand-held products designed to deliver nicotine and other substances to a user in an odorless cloud. ENDS typically consist of a battery-powered heating element, a replaceable cartridge that contains high levels of nicotine, and an atomizer. When heated, the liquid contents of the cartridge are converted into an aerosol that the user inhales (i.e., vapes), delivering nicotine rapidly into his/her bloodstream.

34.     ENDS come in many shapes and sizes and are colloquially referred to as "vapes," "vaporizers," "vape pens," "hookah pens," "electronic cigarettes," "e-cigarettes," "e-cigs," and "e-pipes." ENDS may be manufactured to look like conventional cigarettes, cigars, pipes, pens, and USB flash drives, while others resemble canteens or portable hard drives (sometimes referred to as "tank systems"). The use of ENDS to inhale nicotine is commonly referred to as "vaping," "vaporizing," or—most recently and popularly—"JUULing."

35.     Unlike traditional cigarettes, which once lit by the user has a limited lifespan (usually 6-10 minutes) to consume nicotine, e-cigarette's battery life and nicotine pods permit the user to inhale nicotine up to 300 distinct times before having to replace the cartridge. Further,

---

[17] 21 U.S.C. § 301 (14)-(30).

[18] Adolescents and Tobacco: Trends, U.S. Department of Health and Human Services, https://www.hhs.gov/ash/oah/adolescent-development/substance-use/drugs/tobacco/trends/index.html.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

unlike traditional cigarettes which law requires they be smoked outdoors away from public spaces, e-cigarettes give off an odorless cloud that is undetectable indoors.

### B.    *Chemicals Contained Within E-Cigarettes*

#### i.   *Nicotine*

36.     Nicotine is highly-addictive and acts directly on the neurotransmitter dopamine, causing a dependence similar to heroin and other deadly opiates. Nicotine's potency is even more pronounced when used by adolescents, affecting brain development, attention, cognition, and raising the risk of addiction to other drugs. The addictive nature of nicotine is widely known. In fact, a 2007 study found that nicotine was the third most addictive substance in the world behind heroin and cocaine. [19]

37.     Nicotine's highly addictive nature stems from its effects on the central nervous system. When ingested, nicotine can accelerate blood pressure and pulse, affect mood, increase circulating levels of hormones and neurotransmitters, increase metabolic rate, constrict blood vessels, and cause muscle relaxation. Once nicotine enters the body through inhalation, it is distributed quickly through the bloodstream and crosses the blood-brain barrier, reaching the brain within 10-20 seconds after inhalation. The acute effects of nicotine, though, are fleeting and dissipate in a few minutes. This causes the user to continue dosing frequently to maintain the drug's pleasurable effects and prevent withdrawal symptoms.

38.     There is a frightening overlap between the effects of nicotine and opiates on dopamine signaling with the brain's reward centers.[20] Studies demonstrate the severity of tobacco and nicotine addiction by equating its grip on the individual to that of heroin, as both

---

[19] https://www.cnn.com/2019/01/02/health/most-addictive-substances-partner/index.html.

[20] Opiate And Nicotine Have Surprisingly Similar Effect On Brain's Reward System, Science Daily (Feb. 19, 2008), https://www.sciencedaily.com/releases/2008/02/080212171131.htm.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

nicotine and opiates act on the same structures and receptors in the human brain.[21]

39.     Nicotine has the potential to adversely affect the heart (ischemia and myocardial dysfunction), eyes (macular degeneration and cataracts), reproductive system (irregular menstrual cycles), lungs (asthma and emphysema), kidneys (chronic kidney disease), and has teratogenic side-effects (cognitive deficits and behavioral abnormalities). Exposure to nicotine, even from non-traditional tobacco sources such as nicotine e-cigarettes, produces an increased risk of cardiovascular disease, an increased risk of peripheral arterial disorders due to the increase in blood pressure and its constrictive effect on blood vessels, and an increased risk of stroke.

40.     The adolescent brain is exceptionally more vulnerable to the addictive effects of nicotine because the circuits of the brain underlying pleasure develop faster than the circuits in the brain that promote decision-making, impulse control, and rational thinking. Compared with adults, adolescents are generally more motivated by rewards, are less averse to risks, and are more influenced by peers. The same factors apply to the estimation of health risks relating to smoking— many adolescents have a more optimistic attitude regarding their smoking behavior, believing that they "could smoke for a few years and then quit if they wished."[22]

41.     Among adolescents, the use of nicotine is a psychiatric problem that cultivates addictive behaviors by rewiring and interfering with brain development. Several studies indicate that smoking and nicotine exposure during adolescence is associated with disturbances in working memory and attention, as well as reduced prefrontal cortex activation.[23] Studies show

---

[21] *Id.*

[22] Arnett, JJ. Optimistic bias in adolescent and adult smokers and nonsmokers. *Addict Behav.* 2000; 25(4): 625-32.

[23] 9 Jacobsen LK, Krystal JH, Mencl WE, Westerveld M, Frost SJ, Pugh KR. Effects of smoking and smoking abstinence on cognition in adolescent tobacco smokers. Biological Psychiatry. 2005;57:56–66;

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

that adolescent tobacco and nicotine use are associated with later risk of developing mental and behavioral problems such as major depressive disorder, agoraphobia, panic disorder, addiction to other substances, and/or antisocial personality disorder.[24] Not only does the use of nicotine by adolescents result in a greater level of addiction to nicotine itself, but it increases vulnerability to initiation and subsequent addiction to other drugs as well.

42.      Simply put, the adolescent brain is more vulnerable to the effects of nicotine than the adult brain. Adolescents progress faster to nicotine dependence than adults, find nicotine more rewarding, underestimate the risks of smoking, and are more influenced by smoking behavior in their social environment. Dr. Sharon Levy, director of the Adolescent Substance Use and Addiction Program at Boston Children's Hospital, called the popularity of teen vaping an "entirely predictable problem," given adolescents' vulnerability to nicotine. Levy has treated numerous "vape-addicted" adolescents in her program, showing psychiatric symptoms rarely seen with traditional cigarettes or among adults.

   *ii.   Other Chemicals*

43.      "Vaping" and "vaporizing" as used by JUUL gives the connotation that what the user is inhaling is a harmless vapor.  Nothing could be further from the truth.  In fact, when the liquid inside the pod is warmed it creates an aerosol.

44.      Vapor refers to the gaseous state of a substance; in contrast, an aerosol is a suspension of fine particles of liquid, solid or both in a gas.[25]

---

Musso F, Bettermann F, Vucurevic G, Stoeter P, Konrad A, Winterer G. Smoking impacts on prefrontal attentional network function in young adult brains. Psychopharmacology (Berl) 2007;191:159–169.

[24] Short- and Long-Term Consequences of Nicotine Exposure during Adolescence for Prefrontal Cortext Neuronal Network Function, Cold Spring Harb Perspect Med. (Dec. 2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3543069.

[25] *See* Cheng, T. (2014). "Chemical evaluation of electronic cigarettes" *Tobacco Control*. 23 (Supplement 2).

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

45.     The e-cigarette aerosol is made up of a high concentration of ultrafine particles, and the particle concentration is higher than in conventional tobacco cigarette smoke. Many of the elements identified in the aerosol are known to cause respiratory distress and disease, including tin, silver, iron, nickel, aluminum, and silicate. Further, the concentrations of nine out of eleven elements in the aerosol were found even higher than, or equal to, the corresponding concentrations in conventional cigarette smoke.[26]

## III.   JUUL Products

### A.   Background

46.     JUUL sells more e-cigarettes than any other company in the United States. From 2016 to 2017, JUUL's sales increased 641%, rising from 2.2 million devices sold in 2016 to 16.2 million devices in 2017, giving JUUL 46.8% of the e- cigarette market. By 2018, JUUL's share of the market rose to 75.8%. JUUL is currently valued at over $38 billion. *Figure 1* below depicts the major e-cigarette manufacturers' market share between 2014 to 2018.[27]



*Figure 1: E-Cigarette Market Share 2014-2018*

---

[26] Williams, M.; Villarreal, A.; Bozhilov, K.; Lin, S.; Talbot, P., "Metal and silicate particles including nanoparticles are present in electronic cigarette cartomizer fluid and aerosol," *PLoS ONE* 8(3): e57987, March 20, 2013.

[27] *See* http://www.natocentral.org/uploads/Wall_Street_Update_Slide_Deck_February_2019.pdf.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

47.     As shown in *Figure 2*, the JUUL e-cigarette includes a rechargeable battery and heating element (*i.e.,* ENDS), which work together to heat pre-filled JUUL nicotine pods.



*Figure 2: The JUUL device and accompanying JUUL Pods*

48.     The rectangular JUUL e-cigarette device consists of an aluminum shell, battery, a magnet for the USB-charger, a circuit board, an LED light, and a pressure sensor. The JUUL pod is a plastic enclosure containing 0.7 milliliters of JUUL's nicotine solution and a coil heater. When a sensor in the JUUL e-cigarette detects the movement of air caused by suction on the JUUL pod, the battery activates the heating element which converts the nicotine solution in the JUUL pod into a vapor. The LED light embedded in the JUUL device serves as a battery level indicator and lights up in a "party mode" display of colors when waved around.

49.     In 2015 JUUL obtained a patent for a nicotine salt liquid formulation for generating an inhalable aerosol in an electronic cigarette (Patent No. 9,215,895 ("the JUUL Patent")). JUUL's use of an aerosol, rather than a flame, to activate its nicotine solution results in a quick powerful burst of nicotine which causes users to feel the rapid onset of the nicotine upon

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

inhalation. This mechanism also makes its nicotine exceedingly more addictive.[28]

50.    Nicotine allow manufacturers to pack more nicotine into their products, mask nicotine's naturally unpleasant taste, and permit the drug to be absorbed by the body quicker.[29]

51.    The pre-filled JUUL Pods, which contain JUUL's patented nicotine solution, slide into the end of the JUUL device. JUUL nicotine pods came in a variety of flavors, such as Virginia Tobacco, Classic Tobacco, Mint (formerly Cool Mint), Menthol, Fruit (formerly Fruit Medley), Mango, Cucumber (formerly Cool Cucumber), and Crème (formerly Crème Brûlée).

52.    The JUUL Patent included a blood plasma study comparing the pharmacokinetic effects of nicotine benzoate (nicotine salt) ingested through an e-cigarette to nicotine ingested from a traditional cigarette. The study concluded that:

    a.   nicotine absorption through the e-cigarette is between 1.25 and 2.7 times faster than traditional cigarettes;
    b.   e-cigarettes deliver higher amounts of nicotine at a faster rate than a traditional cigarette; and
    c.   because of JUUL's method of nicotine absorption, JUUL's nicotine solution would still be more addictive than traditional cigarettes even with lower concentrations.[30]

53.    The concentration of nicotine in JUUL pods, however, is not low, especially compared to traditional cigarettes. JUUL actually delivers doses of nicotine that are several times higher than those in traditional cigarettes. JUUL's 2014 patent application shows that JUUL's nicotine solution delivers more nicotine to the bloodstream than a traditional cigarette, creates a peak nicotine blood concentration that is 36% higher than a traditional cigarette, and increases the heart rate faster than a traditional cigarette.

---

[28] https://www.nytimes.com/2018/04/24/health/fda-e-cigarettes-minors-JUUL.html?module=inline.

[29] https://www.cnn.com/2019/01/17/health/vaping-ecigarettes-kids-teens-brains-fda/index.html.

[30] https://patents.google.com/patent/CA2909967A1/en.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

54.     Corinne Graffunder, DrPH, Director of Centers for Disease Control and Prevention's Office on Smoking and Health, stated in 2018, "[t]here are no redeeming benefits of e-cigarettes for young people . . . The use of certain USB-shaped e-cigarettes is especially dangerous among youth because these contain extremely high levels of nicotine, which can harm the developing adolescent brain."[31]

55.     The U.S. Surgeon General, Jerome Adams, stated in December 2018 that JUUL's liquid nicotine mixture is specially formulated to give a smoother, more potent nicotine buzz that "can promote dependence in just a few uses."[32]

## B.     JUUL's Misleading Statements

56.     Throughout its history, JUUL has repeatedly compared the contents of its nicotine pods to traditional tobacco products. Prior to JUUL's release in June 2015, PAX (JUUL's original name) released a "commissioned study" comparing PAX users blood nicotine levels to traditional combustion cigarettes and other e-cigarettes.  According to PAX, the results were as follows:

---

[31] https://www.cdc.gov/media/releases/2018/p1002-e-Cigarettes-sales-danger-youth.html.

[32] https://chicago.suntimes.com/business/juul-teen-vaping-us-surgeon-general.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 3: PAX's pre-release product information comparing nicotine levels*

57.     When JUUL's website debuted in 2015, it included a similar chart:



*Figure 4: JUUL's website chart comparing
nicotine levels*

19

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

58.     While the JUUL Patent indicates that JUUL's nicotine salt solution causes nicotine-blood levels approximately 30% *higher* than a traditional cigarette, the PAX and JUUL charts (*Figures 3 and 4*) indicate that JUUL delivers approximately 25% *less* nicotine to the blood than a cigarette, thereby creating the false impression that JUUL is less addictive than a traditional cigarette.

59.     JUUL's current website and advertisements continue to assert that each JUUL pod is designed to contain approximately 0.7mL with 5% nicotine by weight which, as JUUL asserts in *Figure 5* below, is "approximately equivalent to 1 pack of cigarettes or 200 puffs."



*Figure 5: June 2018 tweet from JUUL comparing JUUL*
*to traditional cigarettes*

60.     JUUL's statements are false, materially misleading, and materially omit facts, including the efficiency with which the product delivers nicotine into the bloodstream.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

61.    Because JUUL's nicotine salts increase the rate and magnitude of blood plasma nicotine compared to cigarettes, the risk of nicotine addiction and abuse is higher for JUUL e-cigarettes than traditional cigarettes.

62.    Despite such knowledge—which is evidenced by its own patent—JUUL never warned or disclosed to consumers that JUUL pods' nicotine salt formulation deliver an exceptionally potent dose of nicotine or that JUUL's nicotine salt formulation delivers more nicotine than traditional cigarettes. In fact, JUUL has misled its customers into believing just the opposite.

63.    Despite making numerous revisions to its packaging since 2015, JUUL did not add nicotine warnings to its device or pods until the FDA forced it to do so in August 2018 when the exterior packaging was changed to add: "WARNING: This product contains nicotine. Nicotine is an addictive chemical."

64.    While JUUL has been compelled  to warn its consumers of the presence of nicotine, it still fails to disclose the other unique and highly addictive attributes of the JUUL products, including that:

   a.  the JUUL pods nicotine salt formulation delivers an exceptionally potent dose of nicotine;
   b.  the JUUL devices deliver doses of nicotine that are several times higher than those allowed in traditional cigarettes;
   c.  the higher efficiency with which the JUUL devices deliver nicotine into the bloodstream increases its addictiveness;
   d.  JUUL pods can be more addictive than traditional cigarettes; and
   e.  the chemicals contained in JUUL pods (including, but not limited to, nicotine) pose serious health risks, such as cancer, stroke, COPD, and other diseases commonly associated with traditional cigarettes.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

65.     Despite having actual and constructive knowledge of the above referenced facts, JUUL continues to knowingly mislead its customers into thinking its product is safer and less addictive than traditional cigarettes.

66.     JUUL misrepresents the nicotine content of JUUL pods by representing them as 5% strength. However, JUUL pods contain more than 5% nicotine by volume and deliver it in a form that is particularly potent. JUUL's use of "strength" to indicate concentration by weight conflicts with the industry standard of reporting concentration by volume, leading consumers to believe it contains less nicotine than other formulations as advertised as 6% nicotine, when JUUL pods in fact contain *more* nicotine than a solution that is 6% nicotine by volume.

67.     JUUL's "5% strength" statement misrepresents the most material feature of its product: the nicotine content.

### C.     JUUL's Advertising Targeted to Minors
#### i.     *JUUL's advertising strategy copied directly from Big Tobacco*

68.     Taking pages out of the tobacco industry's playbook, JUUL crafted its entire marketing strategy around unethical practices that have been known to appeal directly to minors. JUUL adopted the same themes used by Big Tobacco to glamorize smoking while downplaying its addictiveness and deleterious health effects.

69.     In fact, JUUL co-founder James Monsees publicly admitted that he and co-founder Adam Bowen, looked at tobacco industry documents that were made public under the MSA in the mid-2000s, stating: "[The tobacco industry] became a very intriguing space for us to investigate because we had so much information that you wouldn't normally be able to get in most industries. And we were able to catch up, right, to a huge, huge industry in no time. And

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

then we started building prototypes."[33]

70.    In a 2018 interview, Monsees indicated that "the design of JUUL's advertising had been informed by traditional tobacco advertisement and that [the Stanford Research into the Impact of Tobacco Advertising Project's] online tobacco advertising collection had been quite useful to them." *Id.* Unsurprisingly, JUUL's advertisements have promoted similar themes and bear a striking resemblance to those of traditional tobacco companies (*Figures a-f* below).

*a.*      ***Glamorous Models***

 

---

[33] http://tobacco.stanford.edu/tobacco_main/publications/JUUL_Marketing_Stanford.pdf.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**b.   Relaxation**

 

**c.   Social inclusion**

 

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### d.   Romance




### e.   Flavors




25

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### f.    *New technologies and select terms to convey health and safety*



*JUUL's social media campaign*

71.    The goal of a social media campaign is to exploit existing social networks in order to produce brand awareness through online word-of-mouth. Because of the nature and speed of the internet, social media campaigns can rapidly reach a large number of people. It is widely accepted that the best social media campaigns turn customers into salespeople who then repeat company representations and talking points. While the effects of social media campaigns may appear organic, in reality, they are the result of carefully orchestrated corporate advertising.

72.    Studies show that teenagers tend to be on social media far more than adults:

   a.    95% have access to a smartphone;[34]

   b.    89% are online either "almost constantly" or "several times a day";[35]

   c.    On average, spend approximately 9 hours per day online; and[36]

---

[34] http://www.pewinternet.org/2018/05/31/teens-social-media-technology-2018.

[35] *Id.*

[36] https://www.washingtonpost.com/news/the-switch/wp/2015/11/03/teens-spend-nearly-nine-hours-every-day-consuming-media/?utm_term=.95a59dc01ead.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

      d.  70% use social media platforms multiple times a day[37]

73.     Advertisers are, of course, well aware of the above statistics. As one marketing director noted, "when someone becomes a customer at a young age, they will spend three times as much over their lifetime."[38]

74.     Today tobacco companies are prohibited from:

      a.  Using colored text and backgrounds in any advertisements;

      b.  Utilizing colored advertising in publications with significant teen readership;

      c.  Using outdoor advertising such as billboards;

      d.  Sponsoring events;

      e.  Giving free samples;

      f.  Paying any person to use, display, make reference to, or use as a prop any tobacco product in any media; and

      g.  Paying any third party to conduct any activity which the tobacco manufacturer is prohibited from doing.

75.     JUUL, by and through its marketing agencies, have exploited these marketing tactics long since unavailable to tobacco companies. To announce its release in June 2015, JUUL launched a multimillion-dollar "Vaporized" advertising campaign.

76.     As part of its "Vaporized" campaign, JUUL utilized images (such as *Figure 6*) depicting young and stylish models, bold colors, and memorable images, which in turn, promote idealized adolescents using JUUL products – a strategy blatantly aimed at minors.

---

[37] https://www.commonsensemedia.org/social-media-social-life-infographic.

[38] https://www.forbes.com/sites/forbescommunicationscouncil/2018/07/03/why-gen-z-is-on-the-a-list-for-e-commerce-marketers/#4cfc8af2c7b4.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 6: Images from JUUL's "Vaporized" Campaign*

77.     The "Vaporized" campaign's color scheme was similar to colors used by Natural

American Spirit Cigarettes, a leading brand of cigarettes among teenagers (*Figure 7*) below:

 

*Figure 7: American Spirit Cigarettes and
JUUL's Color Scheme*

78.     Instead of warning about the dangers of nicotine, the "Vaporized" campaign

utilized phrases such as "Smoking Evolved" (*see Figure 8*) to appeal to youth's interest with

high-tech and modern products.[39]

---

[39] https://www.forbes.com/sites/robinlewis/2014/09/02/how-apple-neurologically-hooked-its-customers/#57604f8ff001.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 8: Image from JUUL's 2015 Vaporized Campaign*

79.    JUUL promoted its "Vaporized" campaign on Facebook, Instagram, and Twitter. A 2018 report on the growth and marketing of the JUUL brand found that JUUL was one of the first major retail e-cigarette brands to heavily rely on social media to market its products:

> [O]ur study shows that the growth of JUUL was accompanied by innovative marketing across a variety of new media platforms. The marketing of other major retail e-cigarette brands, at least in their early stages, relied heavily on either advertising on TV (e.g., Blu and Njoy) or promotional expenditures to retailers and consumers (e.g., Vuse and MarkTen), or both. However, JUUL was one of the first major retail e-cigarette brands that relied heavily on social media to market and promote its products. In particular, we found the number of JUUL-related tweets was highly correlated with quarterly retail sales of JUUL. In addition to Twitter, JUUL was heavily marketed and promoted on Instagram and YouTube. The official JUUL account on Instagram, for example, used a variety of marketing and promotional schemes to attract, engage with and retain followers. The account used artsy, professional-grade photographs to display its products and evoke lifestyle feelings such as relaxation, freedom and sex appeal. Those posts also heavily emphasized JUUL's variety of flavors.[40]

---

[40] https://tobaccocontrol.bmj.com/content/early/2018/05/31/tobaccocontrol-2018-054382.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

80.  As part of the 'Vaporized' campaign, JUUL sponsored at least 25 launch parties and related events across the country. Again, JUUL failed to include any disclaimers about the dangers of nicotine in their promotional materials. Instead, the invitations (as shown in *Figure 9*) depicted youth-focused imagery and advertised live music.



*Figure 9: JUUL Product Launch Party Promotional Invitation*

81.     At JUUL product launch events,  JUUL distributed free starter packs (*see Figure 11*). As discussed above, the MSA forbids such conduct because the practice directly promotes nicotine addiction. After acknowledging in October 2017 that it is unlawful to distribute free samples of its product at live events, JUUL began "charging" a nominal $1 fee for its product at "demo events."[41]



*Figure 10: JUUL's free New York launch party promotion tweet*

82.     The ultimate goal of a viral social media campaign, like "Vaporized," is to generate significant online buzz about the product such that the customer functions as the spokesperson and promotes the campaign through free online "word-of-mouth" advertising.

83.     "Hashtags"[42] are an essential tool in creating this effect as brands can join in on trending topics and engage with large numbers of readers. "Branded hashtags" that include the company's name provide an additional benefit because every time someone uses a branded

---

[41] http://tobacco.stanford.edu/tobacco_main/publications/JUUL_Marketing_Stanford.pdf.

[42] A hashtag is a type of metadata tag used on social media that makes it possible for others easily to find messages with a specific theme or content.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

hashtag the company's social media presence increases.

84.     JUUL has utilized branded and non-branded hashtags throughout its existence.
Commonly used JUUL hashtags include: #juul, #juulvapor, #switchtojuul, and #vaporized (see
*Figure 11*).



*Figure 11: 2015 and 2017 Social Media Posts by JUUL*

85.     JUUL's strategic use of hashtags has dramatically increased the amount JUUL
related social media posts and its overall social media presence.

86.     JUUL also gained online exposure to minors on social media by paying social
media influencers to promote its product. "Influencers" are individuals who have developed
large social media followings and are viewed as trendsetters.[43] Generally, influencers post
pictures of themselves using the product they are promoting, along with a company-endorsed
hashtag.

---

[43] http://mediakix.com/2018/08/influencer-definition-marketing/#gs.awBGIprD.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

87.    JUUL actively engaged with social media influencers, even posting job listings for influencers online. *Figure 12* shows JUUL responding to an individual's inquiry about being a JUUL "influencer" and directing them to apply on JUUL's website.



*Figure 12: February 2018 tweet by JUUL*
*regarding social media influencers*

88.    JUUL misleadingly presented certain social media posts by failing to disclose that JUUL was paying the person in exchange for making the post. As a result, JUUL's target audience were misled into thinking that these influencers actually used and were endorsing JUUL products, when in fact, the posts were bought and paid for by JUUL.

89.    Along with paid social media influencers, JUUL also posted advertisements and news stories about famous Hollywood celebrities using their products.[44] For instance, JUUL used its social media accounts to promote images of Katy Perry with a JUUL product. Ms. Perry appeals to a very youthful audience.  By tagging Katy Perry in social media posts (*see Figure 13*), JUUL was able to introduce and promote its product to Ms. Perry's 107,000,000 Twitter followers.

---

[44] https://www.forbes.com/sites/kathleenchaykowski/2018/11/16/the-disturbing-focus-of-JUULs-early-marketing-campaigns/#3a1f4dc14f9c.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 13: JUUL social media post with Katy Perry using JUUL products*

90.     While JUUL's competitors spent more than $16 million between 2015 and 2016 on traditional advertising, JUUL spent only $2.1 million between 2015 and 2017 and instead relied on the above-referenced social media strategy. As shown in *Figure 14*, JUUL heavily relied upon this  strategy with the number of JUUL-related tweets exponentially increasing from 8,416 in 2015, to 21,292 in 2016, to 366,786 in 2017.[45]

---

[45] http://tobacco.stanford.edu/tobacco_main/publications/JUUL_Marketing_Stanford.pdf.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 14: Number of JUUL-Related Tweets (2015-2017)*

91.    JUUL's social media strategy was highly successful and profitable. As illustrated in *Figure 15*, JUUL has significantly outperformed its competitors.[46]



*Figure 15: Total Sales of E-Cigarettes Among Largest Manufacturers (2011-2017)*

---

[46] *Id.*

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

92.    JUUL persisted with its online marketing efforts until finally shutting down its social media sites in November 2018, approximately three years after its launch, due to public and governmental scrutiny.

   ii.   *Other JUUL marketing techniques*

93.    JUUL has minimally used traditional marketing channels such as magazines, newspapers, billboards, radio, and television to promote its products. In 2015, however, JUUL utilized a single magazine to launch its advertising campaign – *Vice*. *Vice* markets itself as the "#1 youth media company" with "a mission to empower young people," and "defin[e] global youth culture."[47] JUUL ran a full page spread in *Vice* magazine in 2015 using young models in playful poses:



*Figure 16: JUUL's Vice Magazine Advertisement from 2015*

---

[47] https://kit.vice.com.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

94.     Also as part of its 2015 launch, JUUL employed 12 massive video billboards in Times Square. The video displays showed images of fashionable young models smiling and kissing while enthusiastically vaping. Examples of JUUL's Times Square video billboards are depicted in *Figure 17*.

 

*Figure 17: JUUL's Times Square video billboards from 2015*

95.     Although American tobacco companies agreed to stop using billboards in 1999 due to public health concerns, JUUL has knowingly exploited this practice in order to maximize revenue and profit.

### iii.   *JUUL's unique design, price and use of flavored vapor*

96.     The design of the JUUL e-cigarette is similar to a USB flash drive. It is discrete in size, shape, and even emits a reduced odor – all of which makes it more appealable to youth users. JUUL's website once touted the JUUL as "the i-Phone of E-cigs," framing the device as cool, hip, and fashionable, therefore making it more appealing for minors to own and use.

97.     While a pack of cigarettes contains 20 cigarettes that each need to be lit separately, JUUL can be inhaled continuously and used indoors without detection by others thus eliminating the need for smoking breaks (a feature promoted heavily by JUUL in its

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

advertisements). The design makes it easy to conceal and use without anyone noticing, including authority figures such as teachers and parents.[48]

98.     JUUL products are priced to appeal to minors, as one pack of four JUUL pods is almost as cheap as a single pack of cigarettes. A pack of four JUUL pods, which, according to JUUL is the equivalent of four packs of cigarettes, costs approximately $15.99 on the JUUL website. By contrast, a single pack of cigarettes in Pennsylvania costs approximately $7.00 - $8.00.

99.     Further, unlike traditional cigarettes which are irritating and cause an unpleasant feeling in the chest and lungs, JUUL's use of nicotine salt makes the aerosol more tolerable and even pleasant.[49]

100.    Along with its social media and advertising blitz, JUUL marketed and sold its JUUL pods in a variety of sweetened flavors that naturally appeal to minors. As shown in *Figure 18*, JUUL promoted its flavored nicotine pods through social media and traditional marketing platforms.

 

*Figure 18: JUUL Pod Flavor Marketing Images*

---

[48] https://www.ncbi.nlm.nih.gov/pubmed/30219794.

[49] https://www.vox.com/science-and-health/2018/5/1/17286638/JUUL-vaping-e-cigarette.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

101.     JUUL pods are offered in both 5% and 3% nicotine for select flavors. However, all of the non-traditional, more appealing, adolescent-friendly flavors, such as Mango, Cucumber, Crème, and Fruit are *only* offered in 5% nicotine strength.

102.     Researchers have stated that JUUL's emphasis on sweet flavors directly appeals to youth, a demographic who largely might never use tobacco products.[50] According to a 2013-2014 survey, 81% of current youth e-cigarette users cited the availability of appealing flavors as the primary reason for use.[51]

103.     While the FDA banned traditional flavored cigarettes (other than menthol) in 2009 (such as cherry, chocolate, etc.), JUUL exploited this practice in order to maximize revenue and profit.[52]

104.     In March 2018, the United States Department of Health and Human Services Secretary in Alex Azar, stated, "Flavors are a major reason [high school and middle school students] use these products in the first place."[53]

### D.     Government Investigations

105.     In April 2018, after growing concern of the popularity of e-cigarettes with children, the FDA demanded that JUUL turn over documents about the marketing and research behind its products and stated that it would investigate whether JUUL was intentionally appealing to the youth market.[54] In announcing the investigation, the FDA explained:

---

[50] https://www.businessinsider.com/stanford-JUUL-ads-photos-teens-e-cig-vaping-2018-11.

[51] *See* https://www.tobaccofreekids.org/assets/factsheets/0382.pdf.

[52] https://www.fda.gov/tobaccoproducts/labeling/productsingredientscomponents/ucm2019416.htm.

[53] https://www.usatoday.com/story/news/health/2018/11/15/fda-ban-vaping-flavors-electronic-cigarettes-menthol-cigars-scott-gottlieb/2003219002/.

[54] https://www.nytimes.com/2018/04/24/health/fda-e-cigarettes-minors-JUUL.html?module=inline.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> We need to examine all the available information to understand why kids are finding these products so appealing – and address it. That's why today, the FDA also sent an official request for information directly to JUUL Labs, requiring the company to submit important documents to better understand the reportedly high rates of youth use and the particular youth appeal of these products. The information we're requesting includes: documents related to product marketing; research on the health, toxicological, behavioral or physiologic effects of the products, including youth initiation and use; whether certain product design features, ingredients or specifications appeal to different age groups; and youth-related adverse events and consumer complaints associated with the products. We don't yet fully understand why these products are so popular among youth. But it's imperative that we figure it out, and fast. These documents may help us get there.[55]

106.   In September 2018, the FDA issued a letter to JUUL threatening to pull its products from the market if it did not submit plans within 60 days describing how it will address the widespread youth access and use of their products.[56] The FDA issued more than 1,300 warning letters and civil fines to retailers and distributors who illegally sold e-cigarette products to minors.[57]

107.   On November 15, 2018, Scott Gottlieb (the FDA Commissioner at the time) acknowledged that "[g]iven the startling and disturbing youth use rates . . . it's clear that [the FDA] must do more . . . to target what appear to be the central problems – youth appeal and youth access to flavored tobacco product."[58]

108.   Since the FDA initiated its investigation, JUUL has tacitly admitted wrongdoing. Ashley Gould, the chief administrative officer for JUUL, stated, "[w]e have to take ownership

---

[55] *See* https://www.fda.gov/downloads/TobaccoProducts/Labeling/RulesRegulationsGuidance/ UCM605490.pdf.

[56] https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm620184.html.

[57] https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm620184.html.

[58] https://www.cdc.gov/mmwr/volumes/67/wr/mm6745a5.htm?s_cid=mm6745a5_w.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

for what was done in the past . . . Could we have done things different in the past? Yes."[59] Separately, a former senior manager at JUUL told The New York Times that the company was "well aware" its devices could appeal to teens and that teens were posting images of themselves vaping with JUULs on social media.[60]

109.    In June 2019, United States Congressman Raja Krishnamoorthi of Illinois, Chairman of the House Subcommittee on Economic and Consumer Policy, announced that his committee was investigating JUUL and asked the company to "provide memoranda and communications regarding its social media practices, advertising, and the product's long-term impact on consumer health."[61]

110.    In July 2019, JUUL co-founder James Monsees and chief administrative officer Ashley Gould testified before the House Subcommittee.[62]  During these hearings, it was revealed that JUUL sponsored youth smoking-prevention and education programs — including one called a "holistic health education program"—in high schools, summer camps, and public out-of-school activities, according to documents released by congressional investigators. JUUL paid thousands of dollars, and even hundreds of thousands in some cases, to sponsor events and appear in front of children as young as 8 years old.[63]

111.    Subcommittee testimony included claims that a JUUL representative once visited a high school classroom and told students that JUUL e-cigarettes were "totally safe," according to a memo from Congressional investigators. Congressional lawmakers also produced internal

---

[59] https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-proposed-new-steps-protect-youth-preventing-access.

[60] https://www.nytimes.com/2018/08/27/science/JUUL-vaping-teen-marketing.html.

[61] *See* https://www.cnn.com/2019/06/13/politics/juul-house-investigation-krishnamoorthi-health/index.html.

[62] https://www.cnn.com/2019/07/24/health/juul-hearing-subcommittee/index.html.

[63] https://www.businessinsider.com/juul-congress-e-cigs-target-teens-students-testimony-2019-7.

emails that revealed that JUUL's own employees acknowledged that this strategy drew comparisons to educational programs once held by Big Tobacco companies.[64]

112.    According to the report issued by the House Subcommittee, JUUL "deliberately targeted children in order to become the nation's largest seller of e-cigarettes."[65]

113.    In July 2019, JUUL CEO Kevin Burns publicly apologized to parents with children who are now addicted to his company's products, "First of all, I'd tell them that I'm sorry that their child's using the product."  Burns continued, "It's not intended for them. I hope there was nothing that we did that made it appealing to them. As a parent of a 16-year-old, I'm sorry for them, and I have empathy for them, in terms of what the challenges they're going through."

114.    Following the Congressional hearings in September 2019, the FDA issued JUUL a formal warning letter regarding its marketing and advertising, including its claims that JUUL pods have a "reduced level or exposure to [nicotine]" and that "JUUL products present a lower risk of tobacco-related diseases or are less harmful than one or more other commercially marketed tobacco products."[66]

115.    In response to the FDA's warning, JUUL announced in October 2019 that it would *temporarily* halt online sales of flavored e-cigarettes like mango.[67]

---

[64] *Id.*

[65] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Supplemental%20Memo.pdf.

[66] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/juul-labs-inc-590950-09092019.

[67] https://www.nytimes.com/2019/10/17/health/vaping-juul-e-cigarettes.html.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### E.     JUUL'S "Switch" Marketing Campaign is Misleading

116.    Faced with intense scrutiny from both lawmakers and government agencies, JUUL redefined its marketing campaign from promoting a "luxury" product with youth appeal to a smoking cessation device. JUUL removed many of the internet images depicting glamorous young models exhaling clouds of vapors. Instead, JUUL's website now depicts middle-aged adults in non-glamorous settings and suggests that JUUL exists solely for the benefit of adult smokers looking for an alternative to traditional tobacco products. Of course, JUUL's well-documented history clearly demonstrates that this is not, and was never, its true mission.

117.    Ari Atkins, a JUUL research and development engineer, said before JUUL's launch in 2015, "[w]e don't think a lot about addiction here because we're not trying to design a cessation product at all."[68]

118.    FDA regulations prohibit e-cigarette companies, including but not limited to JUUL from:

a.      claiming their product is less harmful than other tobacco products without providing substantiation to the FDA and receiving FDA's authorization that their product is indeed a modified risk tobacco product; and

b.      making cessation claims without first submitting a medicinal product application to FDA's Center for Drug and Evaluation Research and receiving authorization to do so.[69]

119.    Although JUUL markets its products as safer than a traditional cigarette and as a smoking cessation device, it has not received FDA approval to do so.

120.    In 2014, the FDA found no evidence that JUUL provides cessation benefits: "[t]here is no evidence to date that e-cigarettes are effective cessation devices. . . the number of

---

[68] https://www.washingtonpost.com/news/to-your-health/wp/2018/07/30/e-cigarette-maker-juul- targeted-teens-with-false-claims-of-safety-lawsuit-claims/?utm_term=60d5bcb180db.

[69] 21 C.F.R. § 1100, 1140, and 1143 (2016).

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

cigarette smokers who actually quit tobacco product use with e- cigarettes is low."[70]

121.    Despite being in direct violation of FDA regulations, JUUL continues to market itself as a smoking cessation device. (*see Figure 19*).



*Figure 19: Posted image from JUUL's "Switch" Marketing Campaign*

122.    The JUUL Switch marketing campaign further suggests that smoking traditional cigarettes and e-cigarrettes are mutually exclusive and that purchasing a JUUL will help "switch" a smoker to a non-smoker. For example, as depicted in *Figure 23*, JUUL tweeted an image and quote from a JUUL user whose entire family smoked traditional tobacco products prior to "switching to JUUL" where he suggests he is permanently "staying."

---

[70] https://tobacco.ucsf.edu/sites/tobacco.ucsf.edu/files/u9/FDA-comment-2014-06-02%20Ecigarette%20marketing%20cessation%20messages%20deeming%20rule-1jy-8cgs-l1sq.pdf.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 23: Posted image from*
*JUUL's "Switch" Marketing*
*Campaign*

123.    Despite JUUL's "Switch" campaign, multiple studies demonstrate no significant correlation with cessation of traditional cigarette smoking. [71]

124.    A 2019 study even found that minors who use e-cigarettes are ***more*** likely to become traditional tobacco cigarette smokers than their peers who do not use e-cigarettes:

    a.    Eighth grade students who use e-cigarettes are ten times more likely than their peers who do not use e-cigarettes to eventually smoke traditional cigarettes;

---

[71] Vickerman et al, 2013; Use of electronic cigarettes among state tobacco cessation quit line callers. Nicotine Tob Res, 15 (10): 1787-1791.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

b. Tenth grade students who use e-cigarettes are eight times more likely than their peers who do not use e-cigarettes to eventually smoke traditional cigarettes; and

c. Twelfth grade students who use e-cigarettes are six times more likely than their peers who do not use e-cigarettes to eventually smoke traditional cigarettes. [72]

## F. JUUL's Effects on E-Cigarette Usage Among Minors in Pennsylvania and Montgomery County.

125. There are currently over 109,000 students enrolled in public schools throughout Montgomery County. JUUL's extensive marketing efforts have exposed every Montgomery County student to the potential for significant danger and harm.

126. The Montgomery County Department of Health and Human Services reviewed 2017 PAYS data as well as reports from Montgomery County school districts, that identified the alarming trend among students of using vaping devices in school. To address this growing concern, the Department subsequently released a "Vaping Toolkit" as a resource for schools, parents, educators, and health care providers in October 2018.[73]

127. At least one Montgomery County school district has taken the unusual step of banning all USB drives after officials became aware that some students were using their school-provided laptops to charge JUUL products. "They do look very much like flash drives," said Deborah Wheeler, superintendent of the 4,100-student Upper Dublin School District.

128. Methacton School District (Montgomery County) Superintendent, Dr. David Zerbe, warned parents in 2019 about the growing increase of students vaping in Methacton and urged parents to educate their kids about the dangers. Dr. Zerbe wrote:

> Vaping or the use of e-cigarettes are challenging Methacton and other school districts across the country. What is more concerning is the misconception that these devices are safe alternatives to

---

[72] https://www.hhs.gov/ash/oah/adolescent-development/substance- use/drugs/tobacco/trends/index.html.

[73] *See* https://www.montcopa.org/3271/Youth-Vaping-Prevention-Resources.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

smoking. According to the CDC, U.S. Food and Drug Administration (FDA), and state and local health departments, there is a significant rise in the outbreak of severe pulmonary disease associated with e-cigarette product (devices, liquids, refill pods, and/or cartridges) use. The CDC is clear: "The use of e-cigarettes is unsafe for kids, teens, and young adults." The addictiveness and student-friendly flavors make e-cigarettes increasingly popular. The use of an e-cigarette is NOT a safe alternative to smoking - and in the opinion of health officials - it's even worse! So please talk with your child(ren) and share the attached document as you see fit from the Montgomery County Department of Public Health outlining the issues.

129.   In March 2019, a bill was re-introduced in the Pennsylvania House of Representatives to broaden tobacco laws by including vaping products and allowing police to fine minors who attempt to purchase and/or are caught with vaping paraphernalia at school. The author of this legislation, Rep. Kathy Rapp, said her principal aim was to target stores to discourage them from selling vaping products to youth.[74]

130.   In September 2019, the Pennsylvania Senate responded to the growing vaping crisis among minors by passing legislation that would raise the minimum legal age to buy tobacco and vaping products from 18 years of age to 21.

131.   Despite acknowledging the current vaping crisis among minors, JUUL has not provided remediation.

---

[74] https://www.abc27.com/news/pennsylvania/pa-house-votes-to-ban-e-cigarette-juul-sales-to-minors/.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CAUSES OF ACTION

### VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. §§ 201-1 – 201-9.3

132.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

133.    Defendants JUUL LABS, INC., MARKET 24, LLC, and GURU KOP, INC d/b/a PANTRY 1 FOOD MART are "persons" as defined by 73 P.S. § 201-2(2).

134.    When the District Attorney has reason to believe that a person is using or is about to use any method, act or practice declared to be unlawful by 73 P.S. § 201-3, and that proceedings would be in the public interest, he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice. 73 P.S. § 201-4.

135.    Whenever any court issues a permanent injunction to restrain and prevent violations of the UTPCPL, the court may direct that the Defendants restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any violation of UTPCPL. 73 P.S. § 201-4.1

136.    In any action brought by a District Attorney pursuant to 73 P.S. §201-4, if the court finds that a person, firm or corporation is willfully using or has willfully used a method, act or practice declared unlawful by the UTPCPL, the District Attorney, acting in the name of the Commonwealth of Pennsylvania, may recover a civil penalty of not exceeding one thousand dollars ($1,000) per violation, which civil penalty shall be in addition to other relief which may be granted under sections 4 and 4.14 of the UTPCPL. 73 P.S. § 201-8(b).

137.    While conducting trade or commerce in Pennsylvania, including Montgomery County, JUUL engaged in the following conduct constituting a deceptive act or practice declared

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

unlawful under the UTPCPL:

    a.    Making deceptive fraud, false promises of material fact, and/or misrepresentations of material fact including, but not limited to, the following:

        i.    Misrepresenting JUUL products as non-addictive nicotine delivery systems or less-addictive nicotine delivery systems than traditional cigarettes;

        ii.    Misrepresenting the absorbed nicotine level for the use of JUUL products;

        iii.    Misrepresenting JUUL products as safer and less addictive than traditional cigarettes;

        iv.    Misrepresenting the health benefits of switching from using traditional cigarettes to JUUL products;

        v.    Misrepresenting the use of JUUL products as a way to quit using traditional cigarettes or to quit smoking in general;

        vi.    Misrepresenting the concentration of nicotine salt containing absolute nicotine concentration of at least 1.2% higher than as stated;

        vii.    Misrepresenting the nicotine content of JUUL pods by representing it as 5% strength;

        viii.    Misrepresenting that a JUUL pod contains as much nicotine as a pack of traditional cigarettes when the amount consumed via a JUUL pod is as much as twice as high as traditional cigarettes; and

        ix.    Misrepresenting the nicotine content of JUUL pods as the same as a pack of traditional cigarettes when the nicotine content is closer to 24 cigarettes or at least 20% more than one pack.

    b.    Concealing and/or suppressing material facts by:

        i.    Failing to disclose the chemicals contained in JUUL products;

        ii.    Failing for years to disclose that JUUL products contain any addictive chemicals;

        iii.    Failing to disclose the adverse health effects of using JUUL products including, but not limited to, increased risk of heart disease and stroke, changes in brain functionality that lead to susceptibility to anxiety, depression and other addictions,

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

decreased functionality of the endocrine system, heightened risk of cancer and negative effects on fertility;

iv.   Failing to disclose that JUUL products deliver higher amounts of nicotine at a faster rate than a traditional cigarette;

v.   Failing to disclose that because of JUUL's method of nicotine absorption, JUUL's nicotine solution is more addictive than traditional cigarettes even with lower concentrations;

vi.   Failing to disclose that JUUL's nicotine salts increase the rate and magnitude of blood plasma nicotine compared to traditional cigarettes;

vii.   Failing to disclose that JUUL's nicotine salt formulation delivers an exceptionally potent dose of nicotine;

viii.   Failing to disclose that the efficiency with which JUUL devices deliver nicotine into the bloodstream increases its addictiveness; and

ix.   Failing to disclose that non-smokers who then use JUUL products have a significant likelihood of using traditional cigarettes.

c.   Misrepresenting the product as having the characteristics, ingredients, uses, and benefits they do not have and engaging in conduct which creates a likelihood of confusion or misunderstanding.

138.   JUUL's conduct and omissions alleged herein violate the UTPCPL, 73 P.S. § 201-2(4)(ii), (v), (iv), (v), (xiv), and/or (xxi).

139.   JUUL falsely and deceptively marketed, advertised, and sold JUUL products by misrepresenting their nicotine content, nicotine pharmacokinetics, and suitability as an alternative to cigarettes, and falsely implied that they were useful as a smoking or nicotine-use cessation device.

140.   JUUL falsely and deceptively advertised its products in a manner that lured underage smokers and non-smokers into using JUUL products.

141.   JUUL committed the deceptive acts and unfair practices with the intent that minors would rely upon the deceptive acts and unfair practices.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

142.     JUUL's deceptive acts and unfair practices occurred in the course of conduct involving trade or commerce.

143.     JUUL's deceptive acts and unfair practices have violated and continue to violate the deceptive prong of the UTPCPL because they extend to transactions that are intended to result, or which have resulted, in the sale or distribution of goods or services to consumers.

144.     JUUL's deceptive acts and unfair practices occurred through its advertising, offering for sale, and sale or distribution of merchandise for cash or on credit.

145.     JUUL exposed minors throughout Montgomery County to its long and pervasive marketing campaign and the false/misleading messages conveyed therein. Indeed, the FDA determined minors illegally purchased JUUL products in Montgomery County from MARKET 24 and GURU KOP.

146.     As described above, JUUL's marketing images share common elements that are designed specifically to resonate with minors, including the use of young people and social inclusion to convey the idea that its products are popular and trendy.

147.     JUUL's conduct offends public policy, is immoral, unethical, oppressive, and unscrupulous.

148.     As a direct result of their foregoing acts and practices in violation of the UTPCPL, Defendants have received, and will continue to receive, income, profits, and other benefits, which they would not have received if they had not engaged in violations of the UTPCPL as alleged herein.

149.     As a direct result of the foregoing acts and practices in violation of the UTPCPL, the Commonwealth and its affected residents in Montgomery County and other persons in interest have suffered substantial injury as alleged herein.

150.    As Defendants' foregoing acts and practices in violation of the UTPCPL were a substantial factor in the creation of this crisis, the District Attorney seeks all legal and equitable relief as allowed by law, including, *inter alia,* injunctive relief for Defendants' violations of the UTPCPL, as authorized under 73 P.S. § 201-4. Specifically, the District Attorney seeks an injunction requiring JUUL to cease all false or misleading promotional, marketing, and advertising activities and to inform the medical community and the public of the true risks of the use of JUUL.

151.    The District Attorney further seeks and by way of restoration and/or restitution an order directing Defendants to disgorge all monies acquired or retained by Defendants as a result of their violations of the UTPCPL.

152.    The Commonwealth is entitled to the Court's assessment against Defendants of an appropriate civil penalty for each violation of the UTPCPL by them. The monies demanded herein are in excess of $50,000, exclusive of interests and costs.

153.    Unless and until enjoined and restrained by order of this Court, JUUL will continue to cause injury to Montgomery County, and the loss of money and property in that JUUL will continue to violate the laws of Pennsylvania, unless specifically ordered to comply with the same.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## SECOND CAUSE OF ACTION
## PUBLIC NUISANCE

154.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

155.    The Restatement (Second) of Torts § 821(B), which has been adopted in Pennsylvania, defines a public nuisance as follows:

> (1) An unreasonable interference with a right common to the general public.
>
> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>
> > (a) whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
> >
> > (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
> >
> > (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

156.    JUUL has significantly and unreasonably interfered with the public's right to be free from avoidable injury, disease, sickness and addictive substances hazardous to health. JUUL has irreparably damaged the public health, and the general welfare of the residents of the Montgomery County, and have thereby wrongfully caused Montgomery County to incur costs in support of the public health and welfare created by JUUL's misconduct.

157.    By the wrongful conduct alleged herein, including Defendants' marketing, distribution and sale of JUUL e-cigarettes to the public without disclosure of information relating to the harmful health effects and addictive properties of their products, the Defendants' deliberate and intentional campaign to confuse and deceive the public concerning those addictive

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and harmful health effects, their distribution and marketing of harmful and addictive JUUL e-cigarettes, their manipulation of addictive nicotine levels in their products, and their marketing of e-cigarettes with the intent to induce minors to use them, Defendants have unreasonably endangered and injured the public health and interfered with the public's right to be free from the widespread distribution of substances causing disease and addiction and to be knowledgeable concerning the dangers of JUUL's e-cigarettes.

158.     Defendants' conduct unreasonably interferes with a public right, as demonstrated by *inter alia*, administrative regulation, ordinance or statute, including, but not limited to 18 Pa. C.S. §§ 6301, 6305 and 6306, regarding criminal penalties for furnishing tobacco products to minors and inducing minors to smoke.

159.     Unless the Defendants are enjoined and restrained from continuing their harmful activities and ordered to take affirmative steps to undo and abate the harm and confusion caused by Defendants' conduct, the unreasonable endangerment of the public health as described above will continue, for which Montgomery County has no adequate remedy at law.

160.     The public nuisance created and perpetuated by the Defendants must be abated. Abatement is defined as "[t]he removal, stoppage or destruction by any reasonable means of the cause or constitution of a public nuisance." 11 Pa. C. S. A. § 127A01.

161.     As a direct and foreseeable result of Defendants' public nuisance, the County has paid and will continue to be required to pay for ongoing youth education to contradict the false and misleading marketing JUUL has engaged in, in addition to increased costs for school monitoring and Montgomery County employee health insurance and other health care costs incurred because of e-cigarette related disease. Accordingly, the County is entitled to compensatory damages and injunctive relief in the form of an abatement.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## PRAYER FOR RELIEF

WHEREFORE, the District Attorney of Montgomery County, in the name of the Commonwealth, respectfully requests that the Court enter an Order granting the following relief:

A.      Declaring that JUUL's LABS, INC., MARKET 24, LLC, and GURU KOP, INC., d/b/a/ PANTRY 1 FOOD MART actions violated and continue to violate the UTPCPL;

B.      Awarding the greater of actual or compensatory damages according to proof;

C.      Awarding a monetary award, abatement, and equitable, and/or injunctive relief in the form of a court-enforced and supervised fund and corrective action, programs, communications and other appropriate relief to restore the public health, safety, peace, and honest marketplace in Montgomery County, which will require, at least, the following:

1.      Funding and programs for health care services and programs associated with the early detection, ongoing testing, monitoring for detection of illness, disease process, or disease, diagnosis and treatment of resulting injuries and adverse health consequences of JUUL's conduct;

2.      Funding and programs to combat the abuse and diversion of the use of e-cigarettes by minors including tobacco education programs, cessation programs for users, and public information campaigns to warn users of health effects and addictive nature of the product;

3.      Funding, programs, studies, and research of the short and long-term effects of e-cigarette use in minors and the possible cures and treatments for the detrimental effects of using it;

4.      Funding and programs for accumulating and analyzing relevant medical and demographic information from underage users of e-cigarettes, including the results of testing and diagnosis;

5.      Funding and programs for monitoring and policing schools for the presence of e-cigarettes; and

6.      Funding law enforcement and other services and costs associated with the harm done by JUUL to the public health and safety in Montgomery County.

D.      Awarding punitive damages;

E.      Awarding forfeiture, disgorgement, restitution, rescission, and divesture of JUUL's profits from sales in Montgomery County;

F.      Awarding further injunctive relief as to JUUL's marketing, advertising, distribution and sale to ensure minors are not the intended recipient of JUUL's products or marketing;

G.      Awarding reasonable attorneys' fees and costs;

H.      Awarding pre and post-judgment interest to the extent allowable;

I.      Awarding such other injunctive and declaratory relief as is necessary; and

J.      Awarding such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

Dated:  November 4, 2019

Kevin R. Steele, District Attorney
**MONTGOMERY COUNTY OFFICE OF DISTRICT ATTORNEY**

Steven J. Latzer, **Deputy** District Attorney
**MONTGOMERY COUNTY OFFICE OF DISTRICT ATTORNEY**
(*Additional counsel listed below*)

Simon B. Paris*
Patrick Howard
Charles J. Kocher
**SALTZ MONGELUZZI BARRETT & BENDESKY, P.C.**
120 Gibraltar Road, Ste. 218
Horsham, PA 19044

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Daniel E. Gustafson*
Amanda M. Williams*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402

Anthony D. Shapiro*
**HAGENS, BERMAN, SOBOL
SHAPIRO, LLP**
1301 Second Avenue
Suite 200
Seattle, WA 98101

Edward A. Wallace*
**WEXLER WALLACE, LLP**
55 W Monroe St
Suite 3300
Chicago, IL 60603

Todd J. O'Malley
**O'MALLEY & LANGAN**
201 Franklin Avenue
Scranton, PA 18503

Yvonne M. Flaherty*
**LOCKRIDGE, GRINDAL, NAUEN, P.L.L.P**
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2159

*Pro Hac Vice admission will be filed.

## **VERIFICATION**

I verify that the statements made in this Complaint are true and correct to the best of my knowledge, and belief.  I understand that false statements made herein are subject to the penalties of 18 PA. C.S, Subsection 4904, relating to unsworn falsification to authorities.

Date: 11/4/2019

Steven J. Latzer
Deputy District Attorney
Montgomery County, PA

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1



# MONTGOMERY COUNTY SHERIFF'S DEPARTMENT
## ORDER FOR SERVICE

(Please prepare a separate request for service form for each defendant to be served by the Sheriff)

To:  Sheriff Sean P. Kilkenny
Montgomery County Court House
P.O. Box 311
Norristown, Pennsylvania 19404-0311
Phone: 610-278-3331      Fax: 610-278-3832

*MC*

Date: _11-13-19_

Prothonotary No. 2019-25931

Sheriff Cost: _pd._

| Attorney's Or Plaintiff's Name and Address: | | Civil Action *Complt* | Writ of Execution Levy |
|---|---|---|---|
| **Patrick Howard, Esq.** | | Confessed Judgment | Interrogatories |
| Saltz Mongeluzzi Barrett & Bendesky   120 Gibraltar Road, Suite 120 | | Complaint in Ejectment | Writ of Execution Garnishee |
| **Horsham           PA     19044** | | Posting | Writ of Seizure |
| | | Writ of Possession | Mortgage Foreclosure |
| ATTY. ID# 88572     Telephone: 215-575-3895 | | Other: | Court Order: |

| | FOR SHERIFF USE ONLY          SHERIFF'S RETURN |
|---|---|
| The District Attorney of Montgomery County | PERSON SERVED _VIVEK PATEL_ |
| vs.                PLAINTIFF | RELATIONSHIP/POSITION _PIC_ |
| JUUL Labs, Inc., et al. | PLACE OF SERVICE _Same_ |
| DEFENDANT | DATE OF SERVICE _11/14/19_ |
| | TIME OF SERVICE _1000_ |
| Service Upon: GURU KOP, Inc. d/b/a Pantry 1 Food Mart | NUMBER OF ATTEMPTS _1_ |
| LOCATION (MUST HAVE VALID ADDRESS OR DIRECTIONS) | |
| 207 North Henderson Road       *2 of 2* | DEPUTY _W Gallazzo_ |
| | DEPUTY _____ |
| King of Prussia           PA     19406 | LAST DAY FOR SERVICE _12-4-19_ |

## SERVICE NOT MADE BECAUSE:

DATE:            TIME:              DEPUTY:                DEPUTY:

| | NO SERVICE | | BAD ADDRESS | | UNKNOWN AT ADDRESS | | NEED BETTER ADDRESS |
|---|---|---|---|---|---|---|---|
| | MOVED | | BUILDING VACANT | | ADDRESS OUT OF COUNTY | | OTHER |

### POSSESSION TAKEN:

DATE:            TIME:              DEPUTY:                DEPUTY:

ATTEMPTED SERVICE DATE & TIME                                STAMP

2019-25931-0001   11/18/2019 9:49 AM # 12559622
Rcpt#Z3771522  Fee:$0.00  (Internal Use Only) Served
Main (Public)
MontCo Prothonotary

2

Case# 2019-25931-2 Docketed at Montgomery County Prothonotary on 11/18/2019 2:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## IN THE COURT OF COMMON PLEAS
## OF MONTGOMERY COUNTY, PENNSYLVANIA

THE DISTRICT ATTORNEY OF      :
MONTGOMERY COUNTY,      :
Kevin R. Steele      :
Office of District Attorney      :
2 East Airy Street      :
4th Floor      :
Norristown, PA 19401      :

       **CIVIL CASE NO. : 2019-25931**

         Plaintiff,      :
     v.      :

JUUL LABS, INC., a Delaware corporation,      :      **NON-JURY TRIAL**
560 20th Street      :
San Francisco, CA 94107      :

and      :

MARKET 24, LLC      :
1701 Markley Street      :
Norristown, PA 19401      :

and      :

GURU KOP, INC. D/B/A PANTRY 1      :
FOOD MART      :
207 North Henderson Road      :
King of Prussia, PA 19406      :

         Defendants.

## AFFIDAVIT OF SERVICE

I certify that on November 14, 2019, a true and correct copy of the Complaint and Notice to Defend in the above-captioned matter has been served upon JUUL Labs, Inc. via Certified Mail. Proof of service is attached hereto as Exhibit A.

Dated: November 18, 2019        */s/ Patrick Howard*
           Patrick Howard

Case# 2019-25931-2 Docketed at Montgomery County Prothonotary on 11/18/2019 2:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT A

Case# 2019-25531-2 Docketed at Montgomery County Prothonotary on 11/18/2019 2:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# USPS Tracking®

FAQs ›

## Track Another Package  +

**Tracking Number:** 9414711899561931138994                    Remove ✕

Your item was delivered to the front desk, reception area, or mail room at 1:35 pm on November 14, 2019 in SAN FRANCISCO, CA 94107.

## ✅ Delivered

November 14, 2019 at 1:35 pm
Delivered, Front Desk/Reception/Mail Room
SAN FRANCISCO, CA 94107

Get Updates ⌄

Feedback

---

### Text & Email Updates                                              ⌄

### Tracking History                                                   ⌃

**November 14, 2019, 1:35 pm**
Delivered, Front Desk/Reception/Mail Room
SAN FRANCISCO, CA 94107
Your item was delivered to the front desk, reception area, or mail room at 1:35 pm on November 14, 2019 in SAN FRANCISCO, CA 94107.

**November 14, 2019, 10:30 am**
Arrived at Unit
SAN FRANCISCO, CA 94124

**November 14, 2019, 7:31 am**
Arrived at USPS Facility
SAN FRANCISCO, CA 94124

**November 14, 2019, 7:18 am**
Departed USPS Regional Facility
SAN FRANCISCO CA DISTRIBUTION CENTER

**November 14, 2019, 3:59 am**
Arrived at USPS Regional Destination Facility
SAN FRANCISCO CA DISTRIBUTION CENTER

**November 13, 2019**
In Transit to Next Facility

**November 12, 2019, 6:01 pm**
Arrived at USPS Regional Origin Facility
PHILADELPHIA PA DISTRIBUTION CENTER

**November 12, 2019, 5:01 pm**
Accepted at USPS Regional Facility
PHILADELPHIA PA DISTRIBUTION CENTER

**November 12, 2019, 4:13 pm**
Shipping Label Created, USPS Awaiting Item
HORSHAM, PA 19044

## Product Information                                          ∧

**Postal Product:**                          **Features:**
First-Class Mail®                            Certified Mail™
                                             Return Receipt

**See Less** ∧

Case# 2019-25931-2 Docketed at Montgomery County Prothonotary on 11/18/2019 2:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case #2019-25931-2 Docketed at Montgomery County Prothonotary on 11/18/2019 2:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

## FAQs

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent<br>☐ Addressee<br>B. Received by (Printed Name)　C. Date of Delivery |
| 1. Article Addressed to:<br><br>JUUL LABS, INC<br>560 20th ST.<br>SAN FRANCISCO, CA<br>94107 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9401 0087 5168 4501 22 | 3. Service Type<br>☐ Adult Signature<br>☒ Adult Signature Restricted Delivery<br>☒ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ ...il Restricted Delivery | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☒ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number (Transfer from service label)<br>7015 1520 0003 1008 6166 | |

PS Form 3811, April 2015 PSN 7530-02-000-9053　　　　　　　　Domestic Return Receipt

UNITED STATES POSTAL SERVICE

SAN FRANCISCO
CA 940
15 NOV '19
PM 6 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● Sender: Please print your name, address, and ZIP+4® in this box●

SALTZ MONGELUZZI BARRETT & BENDESKY
120 GIBRALTAR RD. STE. 218
HORSHAM, PA 19044

**USPS TRACKING#**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9401 0087 5168 4501 22

Feedback

USPS Transaction Details

| | | | |
|---|---|---|---|
| **Return Address:** | Patrick Howard<br>Saltz Mongeluzzi Barret & Bendesky<br>120 Gibraltar Road<br>Suite 218<br>Horsham, PA 19044-2349<br>US | **Print Date:**<br>**Ship Date:**<br>**User:**<br>**Weight:**<br>**Refund Type:**<br>**Printed Msg:** | November 12, 2019 - 11:13:10 AM<br>November 15, 2019<br>smbbmail<br>0 lbs 10 oz<br>E-refund |
| **Delivery Address:** | JUUL LABS<br>INC.<br>560 20th Street<br>San Francisco, CA 94107-4344 | | |
| **Cost Code:** | | | |

| | | |
|---|---|---|
| **Class/Service:** | First Class ® | $2.35 |
| **Special Services:** | Certified Mail ® | $3.50 |
| | Return Receipt | $2.80 |
| **Insurance:** | N/A | |
| | **TOTAL COST:** | $8.65 |

**Tracking:**    9414711899561931138994

| Location | Date | Local Time | Description |
|---|---|---|---|
| SAN FRANCISCO, CA, 94107 | November 14, 2019 | 13:35:00 | Delivered, Front Desk/Reception/Mail Room |
| SAN FRANCISCO, CA, 94124 | November 14, 2019 | 10:30:00 | Arrived at Unit |
| SAN FRANCISCO, CA, 94124 | November 14, 2019 | 07:31:00 | Arrived at USPS Facility |

Case# 2019-25931-2 Docketed at Montgomery County Prothonotary on 11/18/2019 2:41 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

3

190119211



# MONTGOMERY COUNTY SHERIFF'S DEPARTMENT
## ORDER FOR SERVICE

(Please prepare a separate request for service form for each defendant to be served by the Sheriff)

To:   Sheriff Sean P. Kilkenny
      Montgomery County Court House
      P.O. Box 311
      Norristown, Pennsylvania 19404-0311
      Phone: 610-278-3331      Fax: 610-278-3832

Date: _11-13-19_

Prothonotary No. **2019-25931**

Sheriff Cost: _99_

Attorney's Or Plaintiff's Name and Address:

**Patrick Howard, Esq.**   340571

Saltz Mongeluzzi Barrett & Bendesky   120 Gibraltar Road, Suite 120

**Horsham**              **PA**   **19044**

ATTY. ID# 88572   Telephone: 215-575-3895

| | |
|---|---|
| X Civil Action complt | Writ of Execution Levy |
| Confessed Judgment | Interrogatories |
| Complaint in Ejectment | Writ of Execution Garnishee |
| Posting | Writ of Seizure |
| Writ of Possession | Mortgage Foreclosure |
| Other: | Court Order: |

The District Attorney of Montgomery County

                        vs.          PLAINTIFF

JUUL Labs, Inc., et al.

                                     DEFENDANT

Service Upon: **Market 24, LLC**
LOCATION (MUST HAVE VALID ADDRESS OR DIRECTIONS)

1701 Markley Street            (1 of 2)

Norristown          PA     19401

**FOR SHERIFF USE ONLY          SHERIFF'S RETURN**

PERSON SERVED _____

RELATIONSHIP/POSITION _____

PLACE OF SERVICE _____

DATE OF SERVICE _____

TIME OF SERVICE _____

NUMBER OF ATTEMPTS _____

DEPUTY _____

DEPUTY _____

LAST DAY FOR SERVICE _12-4-19_

## SERVICE NOT MADE BECAUSE:

DATE: 11-19-19   TIME: 1:50   DEPUTY: SAPP   DEPUTY:

| | | | |
|---|---|---|---|
| X NO SERVICE | X BAD ADDRESS | UNKNOWN AT ADDRESS | NEED BETTER ADDRESS |
| MOVED | BUILDING VACANT | ADDRESS OUT OF COUNTY | OTHER |

### POSSESSION TAKEN:

DATE:          TIME:          DEPUTY:          DEPUTY:

ATTEMPTED SERVICE DATE & TIME
~ Upon arrival on location, 1701 Markley St. Norristown, PA 19401, does not exist. Begins @ 1700 but goes to 1703 on listed street. Does not exist on property records as well.

STAMP

2019 NOV 23   A 9:48   MONTCO, PA

4

Case# 2019-25931-4 Docketed at Montgomery County Prothonotary on 12/11/2019 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

THE DISTRICT ATTORNEY OF MONTGOMERY COUNTY

vs.

JUUL LABS INC A DELAWARE CORP

NO.  2019-25931

## PRAECIPE TO REINSTATE / REISSUE

TO THE PROTHONOTARY:

(      )        **REISSUE WRIT**

(      )        **REINSTATE COMPLAINT**

ORIGINAL SIGNATURE RETAINED
 BY THE FILING PARTY
Signature/ID Number

PATRICK HOWARD, ESQ.
Print Name

1600 JFK BLVD, FOUR PENN CENTER
Address

PHILADELPHIA, PA 19103

215-575-3895
Phone

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:44 PM, Fee = $890.00. The filed certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

THE DISTRICT ATTORNEY OF MONTGOMERY COUNTY

vs.

JUUL LABS INC A DELAWARE CORP

NO. 2019-25931

REINSTATED
Barry Silver 12/11/2019

## NOTICE TO DEFEND - CIVIL

    You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

    YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

    IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

THE DISTRICT ATTORNEY OF MONTGOMERY COUNTY

vs.

JUUL LABS INC A DELAWARE CORP

NO.  2019-25931

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document <u>commencing an action</u> in the Montgomery County Court of Common Pleas.  The information provided herein is used solely as  an aid in tracking cases in the court system.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney:  PATRICK HOWARD, Esq., ID: 88572

Self-Represented (Pro Se) Litigant ☐

**Class Action Suit**          ☐ Yes     ☒ No

**MDJ Appeal**          ☐ Yes     ☒ No          **Money Damages Requested** ☒

**Commencement of Action**:          **Amount in Controversy**:

Complaint          More than $50,000

## Case Type and Code

Miscellaneous: _____

Other _____

**Other:**          VIOLATION OF UTPCPL, 73 PS SEC 201-9.1 ET SEQ. / PUBLIC

Case # 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:04:34 PM, Fee = $80.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:34 PM. Fee=$90.00 The filed filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS
OF MONTGOMERY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| THE DISTRICT ATTORNEY OF<br>MONTGOMERY COUNTY,<br>Kevin R. Steele<br>Office of District Attorney<br>2 East Airy Street<br>4th Floor<br>Norristown, PA 19401 | : | |
| Plaintiff, | : | **CIVIL CASE NO. :** |
| v. | : | |
| JUUL LABS, INC., a Delaware corporation,<br>560 20th Street<br>San Francisco, CA 94107 | : | **NON-JURY TRIAL** |
| and | : | |
| MARKET 24, LLC<br>1701 Markley Street<br>Norristown, PA 19401 | : | |
| and | : | |
| GURU KOP, INC. D/B/A PANTRY 1<br>FOOD MART<br>207 North Henderson Road<br>King of Prussia, PA 19406 | : | |
| Defendants. | : | |

**COMPLAINT**

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $890.00. The file certificate that this filing complies with the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records Public Access Policy that requires that filing confidential information and documents differently than non-confidential information and documents.

Plaintiff, the District Attorney of Montgomery County, in the name of the Commonwealth of Pennsylvania, brings this Civil Action Complaint against Defendants JUUL LABS, INC. ("JUUL"), MARKET 24, LLC, and GURU KOP, INC., d/b/a/ PANTRY 1 FOOD MART for disgorgement, restitution, civil penalties and injunctive relief arising from Defendants' violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 – 201-9.3, ("UTPCPL") and abatement of the public nuisance Defendants created in Montgomery County, and alleges as follows:

## INTRODUCTION

1.      The tobacco industry has preyed on America's youth for decades, aggressively promoting tobacco products using tactics designed to appeal to children. The goal of its marketing campaign was simple: recruit new users at a young age, get them addicted to their product, and create life-long patrons. But while Big Tobacco[1] companies reaped billions of dollars in profits off addicting America's youth to cigarettes, smoking became a public health epidemic acknowledged by the United States Surgeon General in the 1960s, leading to widespread death and disease, pain and suffering, and massive amounts in healthcare costs. Beginning in the late 1990s, adolescent smoking rates finally began to fall. This was not, of course, because nicotine became any less addictive or because tobacco companies stopped preying on America's youth. Instead, it took years of legal battles and government regulation to remove Big Tobacco's reach into youth populations.

2.      While falling addiction rates would be viewed as a remarkable accomplishment by any objective measure, JUUL saw it as a business opportunity. In June 2015, JUUL sought to

---

[1] "Big Tobacco" is a name used to refer to the "big five" largest global tobacco industry companies which are Philip Morris International, British American Tobacco, Imperial Brands, Japan Tobacco International, and China Tobacco. *See* https://en.wikipedia.org/wiki/Big_Tobacco.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:04:14 PM, Fee=$800.00 The file certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

fill the void left by Big Tobacco by introducing a new-age electronic cigarette that is so addictive it led to the "largest ever recorded [increase in substance abuse] in the past 43 years for any adolescent substance used in the U.S."[2] By utilizing new technologies and social media, JUUL picked up right where the Big Tobacco companies left off.

3.   First, JUUL developed a nicotine-delivery product even more addictive than traditional cigarettes. Nicotine itself affects brain development, attention, cognition, and raises the risk of addiction to other dangerous drugs. According to the National Institute on Drug Abuse, nicotine acts directly on the neurotransmitter dopamine, causing a dependence similar to heroin and other deadly opiates that have decimated American communities.[3] Due to JUUL's innovative high-quality, rapid nicotine delivery system, the nicotine is even more potent than the nicotine in traditional cigarettes, which is even more pronounced when used by minors. As a result, JUUL has turned a generation of minors into addicts, constantly craving their next hit of nicotine. And while traditional cigarette smoke leaves an odor and is easily detectible, the JUUL nicotine pods came in sweet flavors and produce an odorless cloud, so it can be inhaled almost anywhere and easily hidden from teachers and parents.

4.   Next, JUUL launched a massive online and social media advertising campaign. Because social media platforms (Instagram, Twitter, Facebook), are primarily used by adolescents, JUUL was able to easily target and manipulate youth by using advertisements designed to fulfill powerful psychological needs like popularity, peer acceptance, and a positive self-image. JUUL's advertisements consistently display glamorous young models using JUUL

---

[2] Vaping Surges: Largest Year-to-Year Increase in Substance Use Ever Recorded in the U.S. for 10th and 12th Grade Students, University of Michigan Institute for Social Research (Dec. 17, 2018), https://isr.umich.edu/news-events/news-releases/national-adolescent-drug-trends-in-2018/.

[3] See https://www.drugabuse.gov/publications/brain-power/grades-6-9/legal-doesn%27t-mean-harmless-module-2/background.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:34 PM, Fee = $300.00. The file contains the filing/application with the provisions of the public access policy of the Unified Judicial System of Pennsylvania: Case Records Public Access Policy. The clerk/prothonotary's office should be contacted if there is a question about filing or availability of documents.

products while partying. Additionally, JUUL saturated social media feeds with advertisements, hashtags, and paid influencers to promote JUUL's sleek new product.

5.      JUUL's predatory strategies were so obvious the United States Food and Drug Administration ("FDA") raided JUUL's headquarters in September 2018 for documents concerning its "sales and marketing practices," particularly in regard to the marketing of e-cigarettes to minors.[4]

6.      In response, JUUL "shut down" its social media accounts and promised to stop selling flavored nicotine pods. JUUL's promises, however, have proven empty. Its social media campaign remains active and JUUL still sells mint and menthol flavored nicotine. Moreover, to a large extent the damage is already done. JUUL's deceptive and negligent practices have already led to widespread adolescent nicotine addiction, which can only be undone through expensive anti-addiction and cessation treatment.  As of October 8, 2019, the Center for Disease Control ("CDC") reports over 1,000 lung-injury cases related to vaping have occurred in 49 states and 26 deaths have been confirmed in 21 states – including one in Pennsylvania.[5]

7.      Now, JUUL controls nearly 75% of the e-cigarette market.[6] However, it is changing course and attempting to brand itself as a "safe" alternative to smoking and as a means to stop smoking traditional cigarettes. JUUL's attempt to rewrite its history is nothing more than a facade, promulgating a false narrative designed to lure adults already addicted to nicotine and vulnerable minors who have no understanding of the lifelong, adverse health consequences of nicotine addiction. In December 2018, Altria, the corporate conglomerate formerly known as

---

[4] https://www.nytimes.com/2018/10/02/health/juul-ecigarettes-fda-raid.html.

[5] https://www.cdc.gov/tobacco/basic_information/e-cigarettes/severe-lung-disease.html.

[6] https://www.cnbc.com/2018/07/02/juul-e-cigarette-sales-have-surged-over-the-past-year.html.

Phillip Morris—one of the world's largest producers and marketers of tobacco cigarettes—purchased a 35% ownership stake in JUUL for approximately $12.8 billion. As such, JUUL is now backed, owned, emboldened, and beholden to Big Tobacco.

8.     Since 1989 the Commonwealth of Pennsylvania has conducted the Pennsylvania Youth Survey ("PAYS"), a survey of school students in the 6th, 8th, 10th and 12th grades to learn about their behavior, attitudes and knowledge concerning alcohol, tobacco, other drugs and violence.[7] Last conducted in 2017, the PAYS data indicates that 16.3% of Pennsylvania students had vaped in the previous 30 days.[8] More specifically, 25% of all high school students and nearly 7% of all middle school students in Pennsylvania had vaped within the previous 30 days. For senior high school students in Montgomery County that number increases to 32.3%.[9]

9.     Dr. Rachel Levine, Pennsylvania's Secretary of Health, characterizes the rapid increase in e-cigarette use by Pennsylvania youth as an "epidemic" and called on all public health officials to work together to "stem that tide."[10]

10.    Montgomery County, through its Office of Drug and Alcohol, has established a website titled Youth Vaping Prevention Resources,[11] which includes a Vaping ToolKit, a resource for schools, parents, educators, and health care providers to assist them in understanding e-cigarettes and the dangers they pose.

11.    Due to rising concerns about JUUL and vaping, one Montgomery County school district, Upper Dublin, took the unusual step in March 2018 of banning all USB drives after officials became aware that some students were using their school-provided laptops to charge

---

[7] *See* https://www.pccd.pa.gov/Juvenile-Justice/Pages/Pennsylvania-Youth-Survey-(PAYS).aspx.

[8] Pennsylvania Youth Survey (PAYS) 2017.

[9] *Id.*

[10] https://local21news.com/news/local/how-pennsylvania-plans-to-stop-youth-vaping.

[11] https://www.montcopa.org/3271/Youth-Vaping-Prevention-Resources.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 AM, Fee = $900.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $90.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records Public Access Policy. The original filing document is retained on file at the office of the Prothonotary and is available for review and inspection at the office of the Prothonotary during normal business hours.

JUUL products. "They do look very much like flash drives," said Deborah Wheeler, superintendent of the 4,100-student school district.[12]

12.    The District Attorney of Montgomery County brings this action to hold Defendant JUUL, and those entities—co-Defendants MARKET 24, LLC and GURU KOP, INC.—who the Federal Drug Administration ("FDA") confirmed to have illegally sold JUUL to minors in Montgomery County, accountable under the UTPCPL for their role in creating and perpetrating this public health crisis.  The District Attorney seeks disgorgement of the revenues acquired by Defendants through their marketing tactics and illegal sales to minors in the County.  The District Attorney also seeks disgorgement, restitution, civil penalties, injunctive relief, as well as restitution to fund addiction treatment along with community and educational outreach programs to abate the public nuisance JUUL has caused.

## PARTIES

13.    Plaintiff is the District Attorney of Montgomery County, Pennsylvania, who brings this action pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1-201-9.3.

14.    The District Attorney is expressly authorized to bring this action under the UTPCPL whenever the District Attorney has reason to believe that any person is using or is about to use any method, act, or practice declared by the UTPCPL to be unlawful, and that such proceedings would be in the public interest.  73 P.S.§ 201-4; § 201-8(b).

15.    Based on the allegations in this Complaint, the District Attorney has considerable reason to believe that that Defendants have used, and will continue to use, methods, acts, and/or

---

[12] https://www.inquirer.com/philly/health/kids-families/juuls-juuling-vaping-electronic-cigarettes-flavor-pods-mango-health-20180313.html.

practices declared by the UTPCPL to be unlawful and is bringing this action for the public's benefit.

16.      Defendant, JUUL LABS, INC., is a corporation existing under the laws of the State of Delaware, with its principal place of business located at 560 20th Street, San Francisco, California 94107. JUUL was formerly known as Ploom Products, Inc. and Pax Labs, Inc.

17.      Defendant, MARKET 24, LLC, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania located at 1701 Markley Street, Norristown, Montgomery County, PA 19401.

18.      Defendant, GURU KOP, INC d/b/a PANTRY 1 FOOD MART, is a company organized and existing under the laws of the Commonwealth of Pennsylvania located at 207 North Henderson Road, King of Prussia, Montgomery County, PA 19406.

19.      In the largest coordinated enforcement effort in the FDA's history, in the summer of 2018 the agency issued more than 1,300 warning letters and civil monetary penalties (fines) to retailers who illegally sold JUUL and other e-cigarette products to minors during a nationwide, undercover blitz of brick-and-mortar and online stores.

20.      Defendant, MARKET 24, LLC was inspected by the FDA on June 29, 2018, and determined it illegally sold JUUL products to minors. On July 12, 2018, the FDA issued a civil monetary penalty to MARKET 24.

21.      Defendant, GURU KOP, INC., was inspected by the FDA during the summer of 2018, and discovered to have illegally sold JUUL to minors and, consequently, was issued a civil monetary penalty.

7

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:34 PM /Fee=$80.00 The file contained in this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## JURISDICTION AND VENUE

22.     This Court has original jurisdiction over this action pursuant to § 931 of the Judicial Code, 42 Pa. C.S.A. § 931(a).

23.     Venue is proper with the Court pursuant to Pa. R. Civ. P. 1006(c)(1).

24.     JUUL's e-cigarette products were marketed, distributed and sold within Montgomery County, Pennsylvania by the Defendants.

## FACTUAL ALLEGATIONS

### I.     History of Tobacco Litigation and Regulation Leading to the Prohibition of Advertising and Marketing to Minors

25.     The tobacco industry as a whole has a sordid history of deceptive marketing that made it one of the most profitable industries in the world. Since the late 19th and early 20th centuries, tobacco companies have wrongly used advertisements to market their products to adolescent users. Over the last 75 years, however, litigation and regulation have effectively led to the prohibition of advertising and marketing cigarettes to minors.

26.     Beginning in the 1950s, individuals began bringing personal injury and wrongful death claims against tobacco companies. In the 1960s, the U.S. Surgeon General began reporting on the health dangers associated with smoking. In response, the United States Congress passed the Federal Cigarette Labeling and Advertising Act in 1965, requiring the surgeon general's warning on every cigarette pack. In 1971, all broadcast advertising on television and radio for cigarettes was banned by Congress pursuant to the Public Health Cigarette Smoking Act. Despite these legislative efforts, smoking remained rampant.

27.     In March 1994, the U.S. Surgeon General reported on the impact that tobacco related advertising and promotional activities has on tobacco consumption by minors. The surgeon general found, among other things, that the use of human models and cartoon characters

in cigarette advertisements conveyed themes that appealed to young people.[13] In a separate 1994 consensus study by the National Academies of Science, Engineering, and Medicine, various themes used by tobacco companies to market to minors were studied. The report ultimately recommended forbidding the use of images and pictures which encouraged adolescent use, and allowing only text without slogans, scenes, or colors, because these marketing techniques encourage adolescent use.

28.     From 1994 through 1997, Attorneys General across the United States filed civil lawsuits against the tobacco industry to recover tobacco-related-health-care costs caused by rampant smoking, including those from Alabama, Alaska, California, Colorado, Connecticut, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Texas, Utah, Washington, and West Virginia.

29.     In 1998, a settlement agreement was reached between the tobacco industry and individual states. The Tobacco Master Settlement Agreement ("MSA"), required cigarette companies to pay $368.5 billion over 25 years to compensate states for the costs of treating smoking-related illness, finance nationwide anti-smoking programs, and to underwrite healthcare for millions of uninsured children. The MSA was designed to forever change the way cigarettes are marketed in the United States by banning various marketing practices that targeted individuals under 18 years old.[14]

---

[13] Preventing Tobacco Use Among Young People: A report of the Surgeon General, Centers for Disease Control and Prevention (Mar. 11, 1994), https://www.cdc.gov/mmwr/pdf/rr/rr4304.pdf.

[14] *See* https://www.nytimes.com/1997/06/21/us/cigarette-makers-in-a-368-billion-accord-to-curb-lawsuits-and-curtail-marketing.html.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:44 PM, Fee = $80.00. The file court that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

30.    In 2006, the United States District Court for the District of Columbia found that major U.S. cigarette companies, including Phillip Morris (now Altria, JUUL's largest shareholder), had violated the MSA by: (1) fraudulently claiming that "low tar" and "light" cigarettes were less harmful when the companies knew they were not, and (2) by marketing their products to children.[15]

31.    In 2009, President Barack Obama signed into law the Family Smoking Prevention and Tobacco Control Act ("FSPTCA"), which: (i.) limits the use of color on tobacco advertisements; (ii.) limits advertising in publications with significant teen readership to black text on white background only; (iii.) establishes 18 as a federal nationwide minimum age for legal cigarette and smokeless tobacco sales; and (iv.) prohibits the use of terms such as "light," "mild," and "low-tar" on tobacco product packages and advertisements.[16] When drafting the FSPTCA, Congress identified a number of relevant findings, including:

a.   Reducing the use of tobacco by minors by 50% would prevent well over 10,000,000 children from becoming regular, daily smokers, saving over 3,000,000 of them from premature tobacco-induced death. Such a reduction in youth smoking would also result in approximately $75 million in savings attributable to reduced health care costs;

b.   Advertising, marketing, and promotion of tobacco products have been directed to attract minors to using tobacco products, and these efforts have resulted in increased use of such products by minors;

c.   The use of tobacco products in motion pictures and other mass media glamorizes its use for minors and encourages them to use tobacco products;

d.   Minors are more susceptible to advertisements promoting reduced cigarette prices; and

e.   Minors are generally more influenced by tobacco

---

[15] *See United States v. Phillip Morris USA, Inc.*, 9 F. Supp. 2d 1 (D.D.C. 2006).

[16] 21 U.S.C. § 301, *et seq.*

marketing than adults.[17]

32.    Due to the above-referenced litigation and regulation, the tobacco's industry advertising practices for traditional cigarettes have been severely restrained. Consequently, cigarette use amongst 12th graders plummeted from 24.6% in 1997 to 5.5% in 2015.[18]

## II.    E-Cigarettes

### A.    *The Electronic Nicotine Delivery System.*

33.    Electronic nicotine delivery systems ("ENDS"), commonly referred to as e-cigarettes, are hand-held products designed to deliver nicotine and other substances to a user in an odorless cloud. ENDS typically consist of a battery-powered heating element, a replaceable cartridge that contains high levels of nicotine, and an atomizer. When heated, the liquid contents of the cartridge are converted into an aerosol that the user inhales (i.e., vapes), delivering nicotine rapidly into his/her bloodstream.

34.    ENDS come in many shapes and sizes and are colloquially referred to as "vapes," "vaporizers," "vape pens," "hookah pens," "electronic cigarettes," "e-cigarettes," "e-cigs," and "e-pipes." ENDS may be manufactured to look like conventional cigarettes, cigars, pipes, pens, and USB flash drives, while others resemble canteens or portable hard drives (sometimes referred to as "tank systems"). The use of ENDS to inhale nicotine is commonly referred to as "vaping," "vaporizing," or—most recently and popularly—"JUULing."

35.    Unlike traditional cigarettes, which once lit by the user has a limited lifespan (usually 6-10 minutes) to consume nicotine, e-cigarette's battery life and nicotine pods permit the user to inhale nicotine up to 300 distinct times before having to replace the cartridge. Further,

---

[17] 21 U.S.C. § 301 (14)-(30).

[18] Adolescents and Tobacco: Trends, U.S. Department of Health and Human Services, https://www.hhs.gov/ash/oah/adolescent-development/substance-use/drugs/tobacco/trends/index.html.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $90.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $890.00 The file certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

unlike traditional cigarettes which law requires they be smoked outdoors away from public spaces, e-cigarettes give off an odorless cloud that is undetectable indoors.

### B.   *Chemicals Contained Within E-Cigarettes*

#### i.   *Nicotine*

36.     Nicotine is highly-addictive and acts directly on the neurotransmitter dopamine, causing a dependence similar to heroin and other deadly opiates. Nicotine's potency is even more pronounced when used by adolescents, affecting brain development, attention, cognition, and raising the risk of addiction to other drugs. The addictive nature of nicotine is widely known. In fact, a 2007 study found that nicotine was the third most addictive substance in the world behind heroin and cocaine. [19]

37.     Nicotine's highly addictive nature stems from its effects on the central nervous system. When ingested, nicotine can accelerate blood pressure and pulse, affect mood, increase circulating levels of hormones and neurotransmitters, increase metabolic rate, constrict blood vessels, and cause muscle relaxation. Once nicotine enters the body through inhalation, it is distributed quickly through the bloodstream and crosses the blood-brain barrier, reaching the brain within 10-20 seconds after inhalation. The acute effects of nicotine, though, are fleeting and dissipate in a few minutes. This causes the user to continue dosing frequently to maintain the drug's pleasurable effects and prevent withdrawal symptoms.

38.     There is a frightening overlap between the effects of nicotine and opiates on dopamine signaling with the brain's reward centers. [20] Studies demonstrate the severity of tobacco and nicotine addiction by equating its grip on the individual to that of heroin, as both

---

[19] https://www.cnn.com/2019/01/02/health/most-addictive-substances-partner/index.html.

[20] Opiate And Nicotine Have Surprisingly Similar Effect On Brain's Reward System, Science Daily (Feb. 19, 2008), https://www.sciencedaily.com/releases/2008/02/080212171131.htm.

Case# 2019-25531-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $9000.00. The file contains the filing/complete with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

nicotine and opiates act on the same structures and receptors in the human brain.[21]

39.   Nicotine has the potential to adversely affect the heart (ischemia and myocardial dysfunction), eyes (macular degeneration and cataracts), reproductive system (irregular menstrual cycles), lungs (asthma and emphysema), kidneys (chronic kidney disease), and has teratogenic side-effects (cognitive deficits and behavioral abnormalities). Exposure to nicotine, even from non-traditional tobacco sources such as nicotine e-cigarettes, produces an increased risk of cardiovascular disease, an increased risk of peripheral arterial disorders due to the increase in blood pressure and its constrictive effect on blood vessels, and an increased risk of stroke.

40.   The adolescent brain is exceptionally more vulnerable to the addictive effects of nicotine because the circuits of the brain underlying pleasure develop faster than the circuits in the brain that promote decision-making, impulse control, and rational thinking. Compared with adults, adolescents are generally more motivated by rewards, are less averse to risks, and are more influenced by peers. The same factors apply to the estimation of health risks relating to smoking— many adolescents have a more optimistic attitude regarding their smoking behavior, believing that they "could smoke for a few years and then quit if they wished."[22]

41.   Among adolescents, the use of nicotine is a psychiatric problem that cultivates addictive behaviors by rewiring and interfering with brain development. Several studies indicate that smoking and nicotine exposure during adolescence is associated with disturbances in working memory and attention, as well as reduced prefrontal cortex activation.[23] Studies show

---

[21] *Id.*

[22] Arnett, JJ. Optimistic bias in adolescent and adult smokers and nonsmokers. *Addict Behav.* 2000; 25(4): 625-32.

[23] 9 Jacobsen LK, Krystal JH, Mencl WE, Westerveld M, Frost SJ, Pugh KR. Effects of smoking and smoking abstinence on cognition in adolescent tobacco smokers. Biological Psychiatry. 2005;57:56–66;

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $800.00. The file contains the filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

that adolescent tobacco and nicotine use are associated with later risk of developing mental and behavioral problems such as major depressive disorder, agoraphobia, panic disorder, addiction to other substances, and/or antisocial personality disorder.[24] Not only does the use of nicotine by adolescents result in a greater level of addiction to nicotine itself, but it increases vulnerability to initiation and subsequent addiction to other drugs as well.

42.     Simply put, the adolescent brain is more vulnerable to the effects of nicotine than the adult brain. Adolescents progress faster to nicotine dependence than adults, find nicotine more rewarding, underestimate the risks of smoking, and are more influenced by smoking behavior in their social environment. Dr. Sharon Levy, director of the Adolescent Substance Use and Addiction Program at Boston Children's Hospital, called the popularity of teen vaping an "entirely predictable problem," given adolescents' vulnerability to nicotine. Levy has treated numerous "vape-addicted" adolescents in her program, showing psychiatric symptoms rarely seen with traditional cigarettes or among adults.

   *ii.  Other Chemicals*

43.     "Vaping" and "vaporizing" as used by JUUL gives the connotation that what the user is inhaling is a harmless vapor.  Nothing could be further from the truth.  In fact, when the liquid inside the pod is warmed it creates an aerosol.

44.     Vapor refers to the gaseous state of a substance; in contrast, an aerosol is a suspension of fine particles of liquid, solid or both in a gas.[25]

---

Musso F, Bettermann F, Vucurevic G, Stoeter P, Konrad A, Winterer G. Smoking impacts on prefrontal attentional network function in young adult brains. Psychopharmacology (Berl) 2007;191:159–169.

[24] Short- and Long-Term Consequences of Nicotine Exposure during Adolescence for Prefrontal Cortext Neuronal Network Function, Cold Spring Harb Perspect Med. (Dec. 2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3543069.

[25] *See* Cheng, T. (2014). "Chemical evaluation of electronic cigarettes" *Tobacco Control*. 23 (Supplement 2).

14

Case# 2019-25531-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $90.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

45.     The e-cigarette aerosol is made up of a high concentration of ultrafine particles, and the particle concentration is higher than in conventional tobacco cigarette smoke.  Many of the elements identified in the aerosol are known to cause respiratory distress and disease, including tin, silver, iron, nickel, aluminum, and silicate. Further, the concentrations of nine out of eleven elements in the aerosol were found even higher than, or equal to, the corresponding concentrations in conventional cigarette smoke.[26]

## III.   JUUL Products

### A.   Background

46.     JUUL sells more e-cigarettes than any other company in the United States. From 2016 to 2017, JUUL's sales increased 641%, rising from 2.2 million devices sold in 2016 to 16.2 million devices in 2017, giving JUUL 46.8% of the e- cigarette market. By 2018, JUUL's share of the market rose to 75.8%. JUUL is currently valued at over $38 billion. *Figure 1* below depicts the major e-cigarette manufacturers' market share between 2014 to 2018.[27]



*Figure 1: E-Cigarette Market Share 2014-2018*

---

[26] Williams, M.; Villarreal, A.; Bozhilov, K.; Lin, S.; Talbot, P., "Metal and silicate particles including nanoparticles are present in electronic cigarette cartomizer fluid and aerosol," *PLoS ONE* 8(3): e57987, March 20, 2013.

[27] *See* http://www.natocentral.org/uploads/Wall_Street_Update_Slide_Deck_February_2019.pdf.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM; Fee = $80.00; Final Filing complies with the provisions of the PBublic Access Policy of the Unified Judicial System of PennsylvaniaCase Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

47.    As shown in *Figure 2*, the JUUL e-cigarette includes a rechargeable battery and
heating element (*i.e.,* ENDS), which work together to heat pre-filled JUUL nicotine pods.



*Figure 2: The JUUL device and accompanying JUUL Pods*

48.    The rectangular JUUL e-cigarette device consists of an aluminum shell, battery, a
magnet for the USB-charger, a circuit board, an LED light, and a pressure sensor. The JUUL pod
is a plastic enclosure containing 0.7 milliliters of JUUL's nicotine solution and a coil heater.
When a sensor in the JUUL e-cigarette detects the movement of air caused by suction on the
JUUL pod, the battery activates the heating element which converts the nicotine solution in the
JUUL pod into a vapor. The LED light embedded in the JUUL device serves as a battery level
indicator and lights up in a "party mode" display of colors when waved around.

49.    In 2015 JUUL obtained a patent for a nicotine salt liquid formulation for
generating an inhalable aerosol in an electronic cigarette (Patent No. 9,215,895 ("the JUUL
Patent")). JUUL's use of an aerosol, rather than a flame, to activate its nicotine solution results in
a quick powerful burst of nicotine which causes users to feel the rapid onset of the nicotine upon

Case# 2019-25931-8 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $80.00. The file certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

inhalation. This mechanism also makes its nicotine exceedingly more addictive.[28]

50. Nicotine allow manufacturers to pack more nicotine into their products, mask nicotine's naturally unpleasant taste, and permit the drug to be absorbed by the body quicker.[29]

51. The pre-filled JUUL Pods, which contain JUUL's patented nicotine solution, slide into the end of the JUUL device. JUUL nicotine pods came in a variety of flavors, such as Virginia Tobacco, Classic Tobacco, Mint (formerly Cool Mint), Menthol, Fruit (formerly Fruit Medley), Mango, Cucumber (formerly Cool Cucumber), and Crème (formerly Crème Brûlée).

52. The JUUL Patent included a blood plasma study comparing the pharmacokinetic effects of nicotine benzoate (nicotine salt) ingested through an e-cigarette to nicotine ingested from a traditional cigarette. The study concluded that:

    a. nicotine absorption through the e-cigarette is between 1.25 and 2.7 times faster than traditional cigarettes;

    b. e-cigarettes deliver higher amounts of nicotine at a faster rate than a traditional cigarette; and

    c. because of JUUL's method of nicotine absorption, JUUL's nicotine solution would still be more addictive than traditional cigarettes even with lower concentrations.[30]

53. The concentration of nicotine in JUUL pods, however, is not low, especially compared to traditional cigarettes. JUUL actually delivers doses of nicotine that are several times higher than those in traditional cigarettes. JUUL's 2014 patent application shows that JUUL's nicotine solution delivers more nicotine to the bloodstream than a traditional cigarette, creates a peak nicotine blood concentration that is 36% higher than a traditional cigarette, and increases the heart rate faster than a traditional cigarette.

---

[28] https://www.nytimes.com/2018/04/24/health/fda-e-cigarettes-minors-JUUL.html?module=inline.

[29] https://www.cnn.com/2019/01/17/health/vaping-ecigarettes-kids-teens-brains-fda/index.html.

[30] https://patents.google.com/patent/CA2909967A1/en.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:34 PM, Fee = $300.00 This file certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

54.     Corinne Graffunder, DrPH, Director of Centers for Disease Control and Prevention's Office on Smoking and Health, stated in 2018, "[t]here are no redeeming benefits of e-cigarettes for young people . . . The use of certain USB-shaped e-cigarettes is especially dangerous among youth because these contain extremely high levels of nicotine, which can harm the developing adolescent brain."[31]

55.     The U.S. Surgeon General, Jerome Adams, stated in December 2018 that JUUL's liquid nicotine mixture is specially formulated to give a smoother, more potent nicotine buzz that "can promote dependence in just a few uses."[32]

**B.     JUUL's Misleading Statements**

56.     Throughout its history, JUUL has repeatedly compared the contents of its nicotine pods to traditional tobacco products. Prior to JUUL's release in June 2015, PAX (JUUL's original name) released a "commissioned study" comparing PAX users blood nicotine levels to traditional combustion cigarettes and other e-cigarettes.  According to PAX, the results were as follows:

---

[31] https://www.cdc.gov/media/releases/2018/p1002-e-Cigarettes-sales-danger-youth.html.

[32] https://chicago.suntimes.com/business/juul-teen-vaping-us-surgeon-general.

18

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:34 PM, Fee = $90.00. The filed office will be certified that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 3: PAX's pre-release product information comparing nicotine levels*

57.     When JUUL's website debuted in 2015, it included a similar chart:



*Figure 4: JUUL's website chart comparing
nicotine levels*

19

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $80.00. The file associated with this filing complies with/the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

58.     While the JUUL Patent indicates that JUUL's nicotine salt solution causes nicotine-blood levels approximately 30% *higher* than a traditional cigarette, the PAX and JUUL charts (*Figures 3 and 4*) indicate that JUUL delivers approximately 25% *less* nicotine to the blood than a cigarette, thereby creating the false impression that JUUL is less addictive than a traditional cigarette.

59.     JUUL's current website and advertisements continue to assert that each JUUL pod is designed to contain approximately 0.7mL with 5% nicotine by weight which, as JUUL asserts in *Figure 5* below, is "approximately equivalent to 1 pack of cigarettes or 200 puffs."



*Figure 5: June 2018 tweet from JUUL comparing JUUL
to traditional cigarettes*

60.     JUUL's statements are false, materially misleading, and materially omit facts, including the efficiency with which the product delivers nicotine into the bloodstream.

61.     Because JUUL's nicotine salts increase the rate and magnitude of blood plasma nicotine compared to cigarettes, the risk of nicotine addiction and abuse is higher for JUUL e-cigarettes than traditional cigarettes.

62.     Despite such knowledge—which is evidenced by its own patent—JUUL never warned or disclosed to consumers that JUUL pods' nicotine salt formulation deliver an exceptionally potent dose of nicotine or that JUUL's nicotine salt formulation delivers more nicotine than traditional cigarettes. In fact, JUUL has misled its customers into believing just the opposite.

63.     Despite making numerous revisions to its packaging since 2015, JUUL did not add nicotine warnings to its device or pods until the FDA forced it to do so in August 2018 when the exterior packaging was changed to add: "WARNING: This product contains nicotine. Nicotine is an addictive chemical."

64.     While JUUL has been compelled  to warn its consumers of the presence of nicotine, it still fails to disclose the other unique and highly addictive attributes of the JUUL products, including that:

  a.  the JUUL pods nicotine salt formulation delivers an exceptionally potent dose of nicotine;

  b.  the JUUL devices deliver doses of nicotine that are several times higher than those allowed in traditional cigarettes;

  c.  the higher efficiency with which the JUUL devices deliver nicotine into the bloodstream increases its addictiveness;

  d.  JUUL pods can be more addictive than traditional cigarettes; and

  e.  the chemicals contained in JUUL pods (including, but not limited to, nicotine) pose serious health risks, such as cancer, stroke, COPD, and other diseases commonly associated with traditional cigarettes.

21

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $80.00. The file of the file certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records Public Access Policy that require filing confidential information and documents differently than non-confidential information and documents.

65.    Despite having actual and constructive knowledge of the above referenced facts, JUUL continues to knowingly mislead its customers into thinking its product is safer and less addictive than traditional cigarettes.

66.    JUUL misrepresents the nicotine content of JUUL pods by representing them as 5% strength. However, JUUL pods contain more than 5% nicotine by volume and deliver it in a form that is particularly potent. JUUL's use of "strength" to indicate concentration by weight conflicts with the industry standard of reporting concentration by volume, leading consumers to believe it contains less nicotine than other formulations as advertised as 6% nicotine, when JUUL pods in fact contain *more* nicotine than a solution that is 6% nicotine by volume.

67.    JUUL's "5% strength" statement misrepresents the most material feature of its product: the nicotine content.

### C.    JUUL's Advertising Targeted to Minors
#### i.    *JUUL's advertising strategy copied directly from Big Tobacco*

68.    Taking pages out of the tobacco industry's playbook, JUUL crafted its entire marketing strategy around unethical practices that have been known to appeal directly to minors. JUUL adopted the same themes used by Big Tobacco to glamorize smoking while downplaying its addictiveness and deleterious health effects.

69.    In fact, JUUL co-founder James Monsees publicly admitted that he and co-founder Adam Bowen, looked at tobacco industry documents that were made public under the MSA in the mid-2000s, stating: "[The tobacco industry] became a very intriguing space for us to investigate because we had so much information that you wouldn't normally be able to get in most industries. And we were able to catch up, right, to a huge, huge industry in no time. And

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $80.00 The file could not be saved that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

then we started building prototypes."[33]

70.   In a 2018 interview, Monsees indicated that "the design of JUUL's advertising had been informed by traditional tobacco advertisement and that [the Stanford Research into the Impact of Tobacco Advertising Project's] online tobacco advertising collection had been quite useful to them." *Id.* Unsurprisingly, JUUL's advertisements have promoted similar themes and bear a striking resemblance to those of traditional tobacco companies (*Figures a-f* below).

*a.*   ***Glamorous Models***




---

[33] http://tobacco.stanford.edu/tobacco_main/publications/JUUL_Marketing_Stanford.pdf.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:44 PM, Fee = $90.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*b.   Relaxation*




*c.   Social inclusion*




24

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:34 PM, Fee = $90.00. The file associated with this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### d.   Romance




### e.   Flavors




25

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:44 AM, Fee = $90.00. The file contains the filing complete with the provisions associated with the filing/public access policy of the unified judicial system of Pennsylvania. Cases Records Public Access Policy of the Unified Judicial System that require filing confidential information and documents differently than non-confidential information and documents.

### f.   *New technologies and select terms to convey health and safety*



*JUUL's social media campaign*

71.     The goal of a social media campaign is to exploit existing social networks in order to produce brand awareness through online word-of-mouth. Because of the nature and speed of the internet, social media campaigns can rapidly reach a large number of people. It is widely accepted that the best social media campaigns turn customers into salespeople who then repeat company representations and talking points. While the effects of social media campaigns may appear organic, in reality, they are the result of carefully orchestrated corporate advertising.

72.     Studies show that teenagers tend to be on social media far more than adults:

   a.   95% have access to a smartphone;[34]

   b.   89% are online either "almost constantly" or "several times a day";[35]

   c.   On average, spend approximately 9 hours per day online; and[36]

---

[34] http://www.pewinternet.org/2018/05/31/teens-social-media-technology-2018.

[35] *Id.*

[36] https://www.washingtonpost.com/news/the-switch/wp/2015/11/03/teens-spend-nearly-nine-hours-every-day-consuming-media/?utm_term=.95a59dc01ead.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $90.00. The file certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records Public Access Policy that require filing confidential information and documents differently than non-confidential information and documents.

    d.  70% use social media platforms multiple times a day[37]

73.    Advertisers are, of course, well aware of the above statistics. As one marketing director noted, "when someone becomes a customer at a young age, they will spend three times as much over their lifetime."[38]

74.    Today tobacco companies are prohibited from:

    a.  Using colored text and backgrounds in any advertisements;

    b.  Utilizing colored advertising in publications with significant teen readership;

    c.  Using outdoor advertising such as billboards;

    d.  Sponsoring events;

    e.  Giving free samples;

    f.  Paying any person to use, display, make reference to, or use as a prop any tobacco product in any media; and

    g.  Paying any third party to conduct any activity which the tobacco manufacturer is prohibited from doing.

75.    JUUL, by and through its marketing agencies, have exploited these marketing tactics long since unavailable to tobacco companies. To announce its release in June 2015, JUUL launched a multimillion-dollar "Vaporized" advertising campaign.

76.    As part of its "Vaporized" campaign, JUUL utilized images (such as *Figure 6*) depicting young and stylish models, bold colors, and memorable images, which in turn, promote idealized adolescents using JUUL products – a strategy blatantly aimed at minors.

---

[37] https://www.commonsensemedia.org/social-media-social-life-infographic.

[38] https://www.forbes.com/sites/forbescommunicationscouncil/2018/07/03/why-gen-z-is-on-the-a-list-for-e-commerce-marketers/#4cfc8af2c7b4.

pg

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:34 PM



*Figure 6: Images from JUUL's "Vaporized" Campaign*

77.     The "Vaporized" campaign's color scheme was similar to colors used by Natural

American Spirit Cigarettes, a leading brand of cigarettes among teenagers (*Figure 7*) below:




*Figure 7: American Spirit Cigarettes and*
*JUUL's Color Scheme*

78.     Instead of warning about the dangers of nicotine, the "Vaporized" campaign

utilized phrases such as "Smoking Evolved" (*see Figure 8*) to appeal to youth's interest with

high-tech and modern products.[39]

---

[39] https://www.forbes.com/sites/robinlewis/2014/09/02/how-apple-neurologically-hooked-its-
customers/#57604f8ff001.

28



*Figure 8: Image from JUUL's 2015 Vaporized Campaign*

79.     JUUL promoted its "Vaporized" campaign on Facebook, Instagram, and Twitter. A 2018 report on the growth and marketing of the JUUL brand found that JUUL was one of the first major retail e-cigarette brands to heavily rely on social media to market its products:

> [O]ur study shows that the growth of JUUL was accompanied by innovative marketing across a variety of new media platforms. The marketing of other major retail e-cigarette brands, at least in their early stages, relied heavily on either advertising on TV (e.g., Blu and Njoy) or promotional expenditures to retailers and consumers (e.g., Vuse and MarkTen), or both. However, JUUL was one of the first major retail e-cigarette brands that relied heavily on social media to market and promote its products. In particular, we found the number of JUUL-related tweets was highly correlated with quarterly retail sales of JUUL. In addition to Twitter, JUUL was heavily marketed and promoted on Instagram and YouTube. The official JUUL account on Instagram, for example, used a variety of marketing and promotional schemes to attract, engage with and retain followers. The account used artsy, professional-grade photographs to display its products and evoke lifestyle feelings such as relaxation, freedom and sex appeal. Those posts also heavily emphasized JUUL's variety of flavors.[40]

---

[40] https://tobaccocontrol.bmj.com/content/early/2018/05/31/tobaccocontrol-2018-054382.

29

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:24 PM, Fee = $80.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:04:4 PM

80.     As part of the 'Vaporized' campaign, JUUL sponsored at least 25 launch parties and related events across the country. Again, JUUL failed to include any disclaimers about the dangers of nicotine in their promotional materials. Instead, the invitations (as shown in *Figure 9*) depicted youth-focused imagery and advertised live music.





*Figure 9: JUUL Product Launch Party Promotional Invitation*

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $900.00 The file certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

81.   At JUUL product launch events,  JUUL distributed free starter packs (*see Figure 11*). As discussed above, the MSA forbids such conduct because the practice directly promotes nicotine addiction. After acknowledging in October 2017 that it is unlawful to distribute free samples of its product at live events, JUUL began "charging" a nominal $1 fee for its product at "demo events."[41]



*Figure 10: JUUL's free New York launch party promotion tweet*

82.   The ultimate goal of a viral social media campaign, like "Vaporized," is to generate significant online buzz about the product such that the customer functions as the spokesperson and promotes the campaign through free online "word-of-mouth" advertising.

83.   "Hashtags"[42] are an essential tool in creating this effect as brands can join in on trending topics and engage with large numbers of readers. "Branded hashtags" that include the company's name provide an additional benefit because every time someone uses a branded

---

[41] http://tobacco.stanford.edu/tobacco_main/publications/JUUL_Marketing_Stanford.pdf.

[42] A hashtag is a type of metadata tag used on social media that makes it possible for others easily to find messages with a specific theme or content.

hashtag the company's social media presence increases.

84.    JUUL has utilized branded and non-branded hashtags throughout its existence. Commonly used JUUL hashtags include: #juul, #juulvapor, #switchtojuul, and #vaporized (see *Figure 11*).



*Figure 11: 2015 and 2017 Social Media Posts by JUUL*

85.    JUUL's strategic use of hashtags has dramatically increased the amount JUUL related social media posts and its overall social media presence.

86.    JUUL also gained online exposure to minors on social media by paying social media influencers to promote its product. "Influencers" are individuals who have developed large social media followings and are viewed as trendsetters.[43] Generally, influencers post pictures of themselves using the product they are promoting, along with a company-endorsed hashtag.

---

[43] http://mediakix.com/2018/08/influencer-definition-marketing/#gs.awBGIprD.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:44 AM/Fee=$80.00.The file certificate that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

87.     JUUL actively engaged with social media influencers, even posting job listings for influencers online. *Figure 12* shows JUUL responding to an individual's inquiry about being a JUUL "influencer" and directing them to apply on JUUL's website.



*Figure 12: February 2018 tweet by JUUL regarding social media influencers*

88.     JUUL misleadingly presented certain social media posts by failing to disclose that JUUL was paying the person in exchange for making the post. As a result, JUUL's target audience were misled into thinking that these influencers actually used and were endorsing JUUL products, when in fact, the posts were bought and paid for by JUUL.

89.     Along with paid social media influencers, JUUL also posted advertisements and news stories about famous Hollywood celebrities using their products.[44] For instance, JUUL used its social media accounts to promote images of Katy Perry with a JUUL product. Ms. Perry appeals to a very youthful audience.  By tagging Katy Perry in social media posts (*see Figure 13*), JUUL was able to introduce and promote its product to Ms. Perry's 107,000,000 Twitter followers.

---

[44] https://www.forbes.com/sites/kathleenchaykowski/2018/11/16/the-disturbing-focus-of-JUULs-early-marketing-campaigns/#3a1f4dc14f9c.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:34:PM, Fee=$890.00 The file certificate that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:44 PM, Fee = $80.00. The filed office of the Prothonotary complies with the provisions of 42 Pa.C.S. 4531(b)(2) in that the foregoing documents comply with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 13: JUUL social media post with Katy Perry using JUUL products*

90.    While JUUL's competitors spent more than $16 million between 2015 and 2016 on traditional advertising, JUUL spent only $2.1 million between 2015 and 2017 and instead relied on the above-referenced social media strategy. As shown in *Figure 14*, JUUL heavily relied upon this  strategy with the number of JUUL-related tweets exponentially increasing from 8,416 in 2015, to 21,292 in 2016, to 366,786 in 2017.[45]

---

[45] http://tobacco.stanford.edu/tobacco_main/publications/JUUL_Marketing_Stanford.pdf.



*Figure 14: Number of JUUL-Related Tweets (2015-2017)*

91.     JUUL's social media strategy was highly successful and profitable. As illustrated in *Figure 15*, JUUL has significantly outperformed its competitors.[46]



*Figure 15: Total Sales of E-Cigarettes Among Largest Manufacturers (2011-2017)*

---

[46] *Id.*

35

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM/Fee=$90.00.This file contains the entire provision of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records Public Access Policy that require filing confidential information and documents differently than non-confidential information and documents.

92.   JUUL persisted with its online marketing efforts until finally shutting down its social media sites in November 2018, approximately three years after its launch, due to public and governmental scrutiny.

    *ii.*   *Other JUUL marketing techniques*

93.   JUUL has minimally used traditional marketing channels such as magazines, newspapers, billboards, radio, and television to promote its products. In 2015, however, JUUL utilized a single magazine to launch its advertising campaign – *Vice*. *Vice* markets itself as the "#1 youth media company" with "a mission to empower young people," and "defin[e] global youth culture."[47] JUUL ran a full page spread in *Vice* magazine in 2015 using young models in playful poses:



*Figure 16: JUUL's Vice Magazine Advertisement from 2015*

---

[47] https://kit.vice.com.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM/Fee=$90.00 The file certificate that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records Public Access Policy that requires filing confidential information and documents differently than non-confidential information and documents.

94.     Also as part of its 2015 launch, JUUL employed 12 massive video billboards in Times Square. The video displays showed images of fashionable young models smiling and kissing while enthusiastically vaping. Examples of JUUL's Times Square video billboards are depicted in *Figure 17*.

 

*Figure 17: JUUL's Times Square video billboards from 2015*

95.     Although American tobacco companies agreed to stop using billboards in 1999 due to public health concerns, JUUL has knowingly exploited this practice in order to maximize revenue and profit.

### iii.   *JUUL's unique design, price and use of flavored vapor*

96.     The design of the JUUL e-cigarette is similar to a USB flash drive. It is discrete in size, shape, and even emits a reduced odor – all of which makes it more appealable to youth users. JUUL's website once touted the JUUL as "the i-Phone of E-cigs," framing the device as cool, hip, and fashionable, therefore making it more appealing for minors to own and use.

97.     While a pack of cigarettes contains 20 cigarettes that each need to be lit separately, JUUL can be inhaled continuously and used indoors without detection by others thus eliminating the need for smoking breaks (a feature promoted heavily by JUUL in its

Case# 2019-25531-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:44 AM, Fee = $80.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

advertisements). The design makes it easy to conceal and use without anyone noticing, including authority figures such as teachers and parents.[48]

98.    JUUL products are priced to appeal to minors, as one pack of four JUUL pods is almost as cheap as a single pack of cigarettes. A pack of four JUUL pods, which, according to JUUL is the equivalent of four packs of cigarettes, costs approximately $15.99 on the JUUL website. By contrast, a single pack of cigarettes in Pennsylvania costs approximately $7.00 - $8.00.

99.    Further, unlike traditional cigarettes which are irritating and cause an unpleasant feeling in the chest and lungs, JUUL's use of nicotine salt makes the aerosol more tolerable and even pleasant.[49]

100.    Along with its social media and advertising blitz, JUUL marketed and sold its JUUL pods in a variety of sweetened flavors that naturally appeal to minors. As shown in *Figure 18*, JUUL promoted its flavored nicotine pods through social media and traditional marketing platforms.

 

*Figure 18: JUUL Pod Flavor Marketing Images*

---

[48] https://www.ncbi.nlm.nih.gov/pubmed/30219794.

[49] https://www.vox.com/science-and-health/2018/5/1/17286638/JUUL-vaping-e-cigarette.

Case# 2019-25531-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 AM Fee = $0.00 The file code that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

101.     JUUL pods are offered in both 5% and 3% nicotine for select flavors. However, all of the non-traditional, more appealing, adolescent-friendly flavors, such as Mango, Cucumber, Crème, and Fruit are *only* offered in 5% nicotine strength.

102.     Researchers have stated that JUUL's emphasis on sweet flavors directly appeals to youth, a demographic who largely might never use tobacco products.[50] According to a 2013-2014 survey, 81% of current youth e-cigarette users cited the availability of appealing flavors as the primary reason for use.[51]

103.     While the FDA banned traditional flavored cigarettes (other than menthol) in 2009 (such as cherry, chocolate, etc.), JUUL exploited this practice in order to maximize revenue and profit.[52]

104.     In March 2018, the United States Department of Health and Human Services Secretary in Alex Azar, stated, "Flavors are a major reason [high school and middle school students] use these products in the first place."[53]

**D.     Government Investigations**

105.     In April 2018, after growing concern of the popularity of e-cigarettes with children, the FDA demanded that JUUL turn over documents about the marketing and research behind its products and stated that it would investigate whether JUUL was intentionally appealing to the youth market.[54] In announcing the investigation, the FDA explained:

---

[50] https://www.businessinsider.com/stanford-JUUL-ads-photos-teens-e-cig-vaping-2018-11.

[51] *See* https://www.tobaccofreekids.org/assets/factsheets/0382.pdf.

[52] https://www.fda.gov/tobaccoproducts/labeling/productsingredientscomponents/ucm2019416.htm.

[53] https://www.usatoday.com/story/news/health/2018/11/15/fda-ban-vaping-flavors-electronic-cigarettes-menthol-cigars-scott-gottlieb/2003219002/.

[54] https://www.nytimes.com/2018/04/24/health/fda-e-cigarettes-minors-JUUL.html?module=inline.

We need to examine all the available information to understand why kids are finding these products so appealing – and address it. That's why today, the FDA also sent an official request for information directly to JUUL Labs, requiring the company to submit important documents to better understand the reportedly high rates of youth use and the particular youth appeal of these products. The information we're requesting includes: documents related to product marketing; research on the health, toxicological, behavioral or physiologic effects of the products, including youth initiation and use; whether certain product design features, ingredients or specifications appeal to different age groups; and youth-related adverse events and consumer complaints associated with the products. We don't yet fully understand why these products are so popular among youth. But it's imperative that we figure it out, and fast. These documents may help us get there.[55]

106.    In September 2018, the FDA issued a letter to JUUL threatening to pull its products from the market if it did not submit plans within 60 days describing how it will address the widespread youth access and use of their products.[56] The FDA issued more than 1,300 warning letters and civil fines to retailers and distributors who illegally sold e-cigarette products to minors.[57]

107.    On November 15, 2018, Scott Gottlieb (the FDA Commissioner at the time) acknowledged that "[g]iven the startling and disturbing youth use rates . . . it's clear that [the FDA] must do more . . . to target what appear to be the central problems – youth appeal and youth access to flavored tobacco product."[58]

108.    Since the FDA initiated its investigation, JUUL has tacitly admitted wrongdoing. Ashley Gould, the chief administrative officer for JUUL, stated, "[w]e have to take ownership

---

[55] *See* https://www.fda.gov/downloads/TobaccoProducts/Labeling/RulesRegulationsGuidance/UCM605490.pdf.

[56] https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm620184.html.

[57] https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm620184.html.

[58] https://www.cdc.gov/mmwr/volumes/67/wr/mm6745a5.htm?s_cid=mm6745a5_w.

40

Case# 2019-25531-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:34 PM, Fee = $90.00. The file certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

for what was done in the past . . . Could we have done things different in the past? Yes."[59] Separately, a former senior manager at JUUL told The New York Times that the company was "well aware" its devices could appeal to teens and that teens were posting images of themselves vaping with JUULs on social media.[60]

109.     In June 2019, United States Congressman Raja Krishnamoorthi of Illinois, Chairman of the House Subcommittee on Economic and Consumer Policy, announced that his committee was investigating JUUL and asked the company to "provide memoranda and communications regarding its social media practices, advertising, and the product's long-term impact on consumer health."[61]

110.     In July 2019, JUUL co-founder James Monsees and chief administrative officer Ashley Gould testified before the House Subcommittee.[62]  During these hearings, it was revealed that JUUL sponsored youth smoking-prevention and education programs — including one called a "holistic health education program"—in high schools, summer camps, and public out-of-school activities, according to documents released by congressional investigators. JUUL paid thousands of dollars, and even hundreds of thousands in some cases, to sponsor events and appear in front of children as young as 8 years old.[63]

111.     Subcommittee testimony included claims that a JUUL representative once visited a high school classroom and told students that JUUL e-cigarettes were "totally safe," according to a memo from Congressional investigators. Congressional lawmakers also produced internal

---

[59] https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-proposed-new-steps-protect-youth-preventing-access.

[60] https://www.nytimes.com/2018/08/27/science/JUUL-vaping-teen-marketing.html.

[61] See https://www.cnn.com/2019/06/13/politics/juul-house-investigation-krishnamoorthi-health/index.html.

[62] https://www.cnn.com/2019/07/24/health/juul-hearing-subcommittee/index.html.

[63] https://www.businessinsider.com/juul-congress-e-cigs-target-teens-students-testimony-2019-7.

emails that revealed that JUUL's own employees acknowledged that this strategy drew comparisons to educational programs once held by Big Tobacco companies.[64]

112.    According to the report issued by the House Subcommittee, JUUL "deliberately targeted children in order to become the nation's largest seller of e-cigarettes."[65]

113.    In July 2019, JUUL CEO Kevin Burns publicly apologized to parents with children who are now addicted to his company's products, "First of all, I'd tell them that I'm sorry that their child's using the product."  Burns continued, "It's not intended for them. I hope there was nothing that we did that made it appealing to them. As a parent of a 16-year-old, I'm sorry for them, and I have empathy for them, in terms of what the challenges they're going through."

114.    Following the Congressional hearings in September 2019, the FDA issued JUUL a formal warning letter regarding its marketing and advertising, including its claims that JUUL pods have a "reduced level or exposure to [nicotine]" and that "JUUL products present a lower risk of tobacco-related diseases or are less harmful than one or more other commercially marketed tobacco products."[66]

115.    In response to the FDA's warning, JUUL announced in October 2019 that it would *temporarily* halt online sales of flavored e-cigarettes like mango.[67]

---

[64] *Id.*

[65] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Supplemental%20Memo.pdf.

[66] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/juul-labs-inc-590950-09092019.

[67] https://www.nytimes.com/2019/10/17/health/vaping-juul-e-cigarettes.html.

42

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:04:47 PM, Fee = $80.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM. Fee=\$0.00. This file contains the swift filing compliance with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### E.   JUUL'S "Switch" Marketing Campaign is Misleading

116.   Faced with intense scrutiny from both lawmakers and government agencies, JUUL redefined its marketing campaign from promoting a "luxury" product with youth appeal to a smoking cessation device. JUUL removed many of the internet images depicting glamorous young models exhaling clouds of vapors. Instead, JUUL's website now depicts middle-aged adults in non-glamorous settings and suggests that JUUL exists solely for the benefit of adult smokers looking for an alternative to traditional tobacco products. Of course, JUUL's well-documented history clearly demonstrates that this is not, and was never, its true mission.

117.   Ari Atkins, a JUUL research and development engineer, said before JUUL's launch in 2015, "[w]e don't think a lot about addiction here because we're not trying to design a cessation product at all."[68]

118.   FDA regulations prohibit e-cigarette companies, including but not limited to JUUL from:

   a.   claiming their product is less harmful than other tobacco products without providing substantiation to the FDA and receiving FDA's authorization that their product is indeed a modified risk tobacco product; and

   b.   making cessation claims without first submitting a medicinal product application to FDA's Center for Drug and Evaluation Research and receiving authorization to do so.[69]

119.   Although JUUL markets its products as safer than a traditional cigarette and as a smoking cessation device, it has not received FDA approval to do so.

120.   In 2014, the FDA found no evidence that JUUL provides cessation benefits: "[t]here is no evidence to date that e-cigarettes are effective cessation devices. . . the number of

---

[68] https://www.washingtonpost.com/news/to-your-health/wp/2018/07/30/e-cigarette-maker-juul-targeted-teens-with-false-claims-of-safety-lawsuit-claims/?utm_term=60d5bcb180db.

[69] 21 C.F.R. § 1100, 1140, and 1143 (2016).

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 AM, Fee = $80.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

cigarette smokers who actually quit tobacco product use with e- cigarettes is low."[70]

121.    Despite being in direct violation of FDA regulations, JUUL continues to market itself as a smoking cessation device. (*see Figure 19*).



*Figure 19: Posted image from JUUL's "Switch" Marketing Campaign*

122.    The JUUL Switch marketing campaign further suggests that smoking traditional cigarettes and e-cigarrettes are mutually exclusive and that purchasing a JUUL will help "switch" a smoker to a non-smoker. For example, as depicted in *Figure 23*, JUUL tweeted an image and quote from a JUUL user whose entire family smoked traditional tobacco products prior to "switching to JUUL" where he suggests he is permanently "staying."

---

[70] https://tobacco.ucsf.edu/sites/tobacco.ucsf.edu/files/u9/FDA-comment-2014-06-02%20Ecigarette%20marketing%20cessation%20messages%20deeming%20rule-1jy-8cgs-l1sq.pdf.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:44 PM, Fee = $80.00. The file contains the filing complete with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 23: Posted image from
JUUL's "Switch" Marketing
Campaign*

123.     Despite JUUL's "Switch" campaign, multiple studies demonstrate no significant

correlation with cessation of traditional cigarette smoking.[71]

124.     A 2019 study even found that minors who use e-cigarettes are ***more*** likely to

become traditional tobacco cigarette smokers than their peers who do not use e-cigarettes:

   a.   Eighth grade students who use e-cigarettes are ten times more likely
        than their peers who do not use e-cigarettes to eventually smoke
        traditional cigarettes;

---

[71] Vickerman et al, 2013; Use of electronic cigarettes among state tobacco cessation quit line callers.
Nicotine Tob Res, 15 (10): 1787-1791.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 3:34 PM. Fee=$80.00. The file certified that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records Public Access Policy. The filing party has the sole responsibility for the redaction of confidential information and documents.

    b.   Tenth grade students who use e-cigarettes are eight times more likely than their peers who do not use e-cigarettes to eventually smoke traditional cigarettes; and

    c.   Twelfth grade students who use e-cigarettes are six times more likely than their peers who do not use e-cigarettes to eventually smoke traditional cigarettes. [72]

## F.    JUUL's Effects on E-Cigarette Usage Among Minors in Pennsylvania and Montgomery County.

125.    There are currently over 109,000 students enrolled in public schools throughout Montgomery County. JUUL's extensive marketing efforts have exposed every Montgomery County student to the potential for significant danger and harm.

126.    The Montgomery County Department of Health and Human Services reviewed 2017 PAYS data as well as reports from Montgomery County school districts, that identified the alarming trend among students of using vaping devices in school. To address this growing concern, the Department subsequently released a "Vaping Toolkit" as a resource for schools, parents, educators, and health care providers in October 2018.[73]

127.    At least one Montgomery County school district has taken the unusual step of banning all USB drives after officials became aware that some students were using their school-provided laptops to charge JUUL products. "They do look very much like flash drives," said Deborah Wheeler, superintendent of the 4,100-student Upper Dublin School District.

128.    Methacton School District (Montgomery County) Superintendent, Dr. David Zerbe, warned parents in 2019 about the growing increase of students vaping in Methacton and urged parents to educate their kids about the dangers. Dr. Zerbe wrote:

> Vaping or the use of e-cigarettes are challenging Methacton and other school districts across the country. What is more concerning is the misconception that these devices are safe alternatives to

---

[72] https://www.hhs.gov/ash/oah/adolescent-development/substance- use/drugs/tobacco/trends/index.html.

[73] *See* https://www.montcopa.org/3271/Youth-Vaping-Prevention-Resources.

smoking. According to the CDC, U.S. Food and Drug Administration (FDA), and state and local health departments, there is a significant rise in the outbreak of severe pulmonary disease associated with e-cigarette product (devices, liquids, refill pods, and/or cartridges) use. The CDC is clear: "The use of e-cigarettes is unsafe for kids, teens, and young adults." The addictiveness and student-friendly flavors make e-cigarettes increasingly popular. The use of an e-cigarette is NOT a safe alternative to smoking - and in the opinion of health officials - it's even worse! So please talk with your child(ren) and share the attached document as you see fit from the Montgomery County Department of Public Health outlining the issues.

129.    In March 2019, a bill was re-introduced in the Pennsylvania House of Representatives to broaden tobacco laws by including vaping products and allowing police to fine minors who attempt to purchase and/or are caught with vaping paraphernalia at school. The author of this legislation, Rep. Kathy Rapp, said her principal aim was to target stores to discourage them from selling vaping products to youth.[74]

130.    In September 2019, the Pennsylvania Senate responded to the growing vaping crisis among minors by passing legislation that would raise the minimum legal age to buy tobacco and vaping products from 18 years of age to 21.

131.    Despite acknowledging the current vaping crisis among minors, JUUL has not provided remediation.

---

[74] https://www.abc27.com/news/pennsylvania/pa-house-votes-to-ban-e-cigarette-juul-sales-to-minors/.

## CAUSES OF ACTION

## VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. §§ 201-1 – 201-9.3

132.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

133.    Defendants JUUL LABS, INC., MARKET 24, LLC, and GURU KOP, INC d/b/a PANTRY 1 FOOD MART are "persons" as defined by 73 P.S. § 201-2(2).

134.    When the District Attorney has reason to believe that a person is using or is about to use any method, act or practice declared to be unlawful by 73 P.S. § 201-3, and that proceedings would be in the public interest, he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice. 73 P.S. § 201-4.

135.    Whenever any court issues a permanent injunction to restrain and prevent violations of the UTPCPL, the court may direct that the Defendants restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any violation of UTPCPL. 73 P.S. § 201-4.1

136.    In any action brought by a District Attorney pursuant to 73 P.S. §201-4, if the court finds that a person, firm or corporation is willfully using or has willfully used a method, act or practice declared unlawful by the UTPCPL, the District Attorney, acting in the name of the Commonwealth of Pennsylvania, may recover a civil penalty of not exceeding one thousand dollars ($1,000) per violation, which civil penalty shall be in addition to other relief which may be granted under sections 4 and 4.14 of the UTPCPL. 73 P.S. § 201-8(b).

137.    While conducting trade or commerce in Pennsylvania, including Montgomery County, JUUL engaged in the following conduct constituting a deceptive act or practice declared

unlawful under the UTPCPL:

a.  Making deceptive fraud, false promises of material fact, and/or misrepresentations of material fact including, but not limited to, the following:

i.  Misrepresenting JUUL products as non-addictive nicotine delivery systems or less-addictive nicotine delivery systems than traditional cigarettes;

ii.  Misrepresenting the absorbed nicotine level for the use of JUUL products;

iii.  Misrepresenting JUUL products as safer and less addictive than traditional cigarettes;

iv.  Misrepresenting the health benefits of switching from using traditional cigarettes to JUUL products;

v.  Misrepresenting the use of JUUL products as a way to quit using traditional cigarettes or to quit smoking in general;

vi.  Misrepresenting the concentration of nicotine salt containing absolute nicotine concentration of at least 1.2% higher than as stated;

vii.  Misrepresenting the nicotine content of JUUL pods by representing it as 5% strength;

viii.  Misrepresenting that a JUUL pod contains as much nicotine as a pack of traditional cigarettes when the amount consumed via a JUUL pod is as much as twice as high as traditional cigarettes; and

ix.  Misrepresenting the nicotine content of JUUL pods as the same as a pack of traditional cigarettes when the nicotine content is closer to 24 cigarettes or at least 20% more than one pack.

b.  Concealing and/or suppressing material facts by:

i.  Failing to disclose the chemicals contained in JUUL products;

ii.  Failing for years to disclose that JUUL products contain any addictive chemicals;

iii.  Failing to disclose the adverse health effects of using JUUL products including, but not limited to, increased risk of heart disease and stroke, changes in brain functionality that lead to susceptibility to anxiety, depression and other addictions,

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $80.00. The filer certified that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 AM, Fee = $80.00. The file contains that it filed with the provisions of the applicable law governing the filing and legal process with the electronic filing system. Even if the document is filed electronically the original or officially filed documents to maintain the original documents.

decreased functionality of the endocrine system, heightened risk of cancer and negative effects on fertility;

    iv.    Failing to disclose that JUUL products deliver higher amounts of nicotine at a faster rate than a traditional cigarette;

    v.    Failing to disclose that because of JUUL's method of nicotine absorption, JUUL's nicotine solution is more addictive than traditional cigarettes even with lower concentrations;

    vi.    Failing to disclose that JUUL's nicotine salts increase the rate and magnitude of blood plasma nicotine compared to traditional cigarettes;

    vii.    Failing to disclose that JUUL's nicotine salt formulation delivers an exceptionally potent dose of nicotine;

    viii.    Failing to disclose that the efficiency with which JUUL devices deliver nicotine into the bloodstream increases its addictiveness; and

    ix.    Failing to disclose that non-smokers who then use JUUL products have a significant likelihood of using traditional cigarettes.

    c.    Misrepresenting the product as having the characteristics, ingredients, uses, and benefits they do not have and engaging in conduct which creates a likelihood of confusion or misunderstanding.

138.    JUUL's conduct and omissions alleged herein violate the UTPCPL, 73 P.S. § 201-2(4)(ii), (v), (iv), (v), (xiv), and/or (xxi).

139.    JUUL falsely and deceptively marketed, advertised, and sold JUUL products by misrepresenting their nicotine content, nicotine pharmacokinetics, and suitability as an alternative to cigarettes, and falsely implied that they were useful as a smoking or nicotine-use cessation device.

140.    JUUL falsely and deceptively advertised its products in a manner that lured underage smokers and non-smokers into using JUUL products.

141.    JUUL committed the deceptive acts and unfair practices with the intent that minors would rely upon the deceptive acts and unfair practices.

142.    JUUL's deceptive acts and unfair practices occurred in the course of conduct involving trade or commerce.

143.    JUUL's deceptive acts and unfair practices have violated and continue to violate the deceptive prong of the UTPCPL because they extend to transactions that are intended to result, or which have resulted, in the sale or distribution of goods or services to consumers.

144.    JUUL's deceptive acts and unfair practices occurred through its advertising, offering for sale, and sale or distribution of merchandise for cash or on credit.

145.    JUUL exposed minors throughout Montgomery County to its long and pervasive marketing campaign and the false/misleading messages conveyed therein. Indeed, the FDA determined minors illegally purchased JUUL products in Montgomery County from MARKET 24 and GURU KOP.

146.    As described above, JUUL's marketing images share common elements that are designed specifically to resonate with minors, including the use of young people and social inclusion to convey the idea that its products are popular and trendy.

147.    JUUL's conduct offends public policy, is immoral, unethical, oppressive, and unscrupulous.

148.    As a direct result of their foregoing acts and practices in violation of the UTPCPL, Defendants have received, and will continue to receive, income, profits, and other benefits, which they would not have received if they had not engaged in violations of the UTPCPL as alleged herein.

149.    As a direct result of the foregoing acts and practices in violation of the UTPCPL, the Commonwealth and its affected residents in Montgomery County and other persons in interest have suffered substantial injury as alleged herein.

150.     As Defendants' foregoing acts and practices in violation of the UTPCPL were a substantial factor in the creation of this crisis, the District Attorney seeks all legal and equitable relief as allowed by law, including, *inter alia,* injunctive relief for Defendants' violations of the UTPCPL, as authorized under 73 P.S. § 201-4. Specifically, the District Attorney seeks an injunction requiring JUUL to cease all false or misleading promotional, marketing, and advertising activities and to inform the medical community and the public of the true risks of the use of JUUL.

151.     The District Attorney further seeks and by way of restoration and/or restitution an order directing Defendants to disgorge all monies acquired or retained by Defendants as a result of their violations of the UTPCPL.

152.     The Commonwealth is entitled to the Court's assessment against Defendants of an appropriate civil penalty for each violation of the UTPCPL by them. The monies demanded herein are in excess of $50,000, exclusive of interests and costs.

153.     Unless and until enjoined and restrained by order of this Court, JUUL will continue to cause injury to Montgomery County, and the loss of money and property in that JUUL will continue to violate the laws of Pennsylvania, unless specifically ordered to comply with the same.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $90.00. The file contains all the provisions of the filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## SECOND CAUSE OF ACTION
## <u>PUBLIC NUISANCE</u>

154.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

155.     The Restatement (Second) of Torts § 821(B), which has been adopted in Pennsylvania, defines a public nuisance as follows:

> (1) An unreasonable interference with a right common to the general public.
>
> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>
>> (a) whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
>>
>> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
>>
>> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

156.     JUUL has significantly and unreasonably interfered with the public's right to be free from avoidable injury, disease, sickness and addictive substances hazardous to health. JUUL has irreparably damaged the public health, and the general welfare of the residents of the Montgomery County, and have thereby wrongfully caused Montgomery County to incur costs in support of the public health and welfare created by JUUL's misconduct.

157.     By the wrongful conduct alleged herein, including Defendants' marketing, distribution and sale of JUUL e-cigarettes to the public without disclosure of information relating to the harmful health effects and addictive properties of their products, the Defendants' deliberate and intentional campaign to confuse and deceive the public concerning those addictive

and harmful health effects, their distribution and marketing of harmful and addictive JUUL e-cigarettes, their manipulation of addictive nicotine levels in their products, and their marketing of e-cigarettes with the intent to induce minors to use them, Defendants have unreasonably endangered and injured the public health and interfered with the public's right to be free from the widespread distribution of substances causing disease and addiction and to be knowledgeable concerning the dangers of JUUL's e-cigarettes.

158.   Defendants' conduct unreasonably interferes with a public right, as demonstrated by *inter alia*, administrative regulation, ordinance or statute, including, but not limited to 18 Pa. C.S. §§ 6301, 6305 and 6306, regarding criminal penalties for furnishing tobacco products to minors and inducing minors to smoke.

159.   Unless the Defendants are enjoined and restrained from continuing their harmful activities and ordered to take affirmative steps to undo and abate the harm and confusion caused by Defendants' conduct, the unreasonable endangerment of the public health as described above will continue, for which Montgomery County has no adequate remedy at law.

160.   The public nuisance created and perpetuated by the Defendants must be abated. Abatement is defined as "[t]he removal, stoppage or destruction by any reasonable means of the cause or constitution of a public nuisance." 11 Pa. C. S. A. § 127A01.

161.   As a direct and foreseeable result of Defendants' public nuisance, the County has paid and will continue to be required to pay for ongoing youth education to contradict the false and misleading marketing JUUL has engaged in, in addition to increased costs for school monitoring and Montgomery County employee health insurance and other health care costs incurred because of e-cigarette related disease. Accordingly, the County is entitled to compensatory damages and injunctive relief in the form of an abatement.

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $80.00. The file certificate that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## PRAYER FOR RELIEF

WHEREFORE, the District Attorney of Montgomery County, in the name of the Commonwealth, respectfully requests that the Court enter an Order granting the following relief:

A.      Declaring that JUUL's LABS, INC., MARKET 24, LLC, and GURU KOP, INC.,

d/b/a/ PANTRY 1 FOOD MART actions violated and continue to violate the UTPCPL;

B.      Awarding the greater of actual or compensatory damages according to proof;

C.      Awarding a monetary award, abatement, and equitable, and/or injunctive relief in the form of a court-enforced and supervised fund and corrective action, programs, communications and other appropriate relief to restore the public health, safety, peace, and honest marketplace in Montgomery County, which will require, at least, the following:

1.      Funding and programs for health care services and programs associated with the early detection, ongoing testing, monitoring for detection of illness, disease process, or disease, diagnosis and treatment of resulting injuries and adverse health consequences of JUUL's conduct;

2.      Funding and programs to combat the abuse and diversion of the use of e-cigarettes by minors including tobacco education programs, cessation programs for users, and public information campaigns to warn users of health effects and addictive nature of the product;

3.      Funding, programs, studies, and research of the short and long-term effects of e-cigarette use in minors and the possible cures and treatments for the detrimental effects of using it;

4.      Funding and programs for accumulating and analyzing relevant medical and demographic information from underage users of e-cigarettes, including the results of testing and diagnosis;

5.      Funding and programs for monitoring and policing schools for the presence of e-cigarettes; and

6.      Funding law enforcement and other services and costs associated with the harm done by JUUL to the public health and safety in Montgomery County.

D.      Awarding punitive damages;

Case# 2019-25931-4 Docketed at Montgomery County Prothonotary on 12/11/2019 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-25931-4 Docketed at Montgomery County Prothonotary on 11/04/2019 3:57 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

E.       Awarding forfeiture, disgorgement, restitution, rescission, and divesture of JUUL's profits from sales in Montgomery County;

F.       Awarding further injunctive relief as to JUUL's marketing, advertising, distribution and sale to ensure minors are not the intended recipient of JUUL's products or marketing;

G.       Awarding reasonable attorneys' fees and costs;

H.       Awarding pre and post-judgment interest to the extent allowable;

I.       Awarding such other injunctive and declaratory relief as is necessary; and

J.       Awarding such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

Dated:  November 4, 2019

Kevin R. Steele, District Attorney
**MONTGOMERY COUNTY OFFICE
OF DISTRICT ATTORNEY**

Steven J. Latzer, **Deputy** District Attorney
**MONTGOMERY COUNTY OFFICE
OF DISTRICT ATTORNEY**
(*Additional counsel listed below*)

Simon B. Paris*
Patrick Howard
Charles J. Kocher
**SALTZ MONGELUZZI BARRETT
& BENDESKY, P.C.**
120 Gibraltar Road, Ste. 218
Horsham, PA 19044

Case# 2019-25931-0 Docketed at Montgomery County Prothonotary on 12/04/2019 10:14 PM, Fee = $300.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Daniel E. Gustafson*
Amanda M. Williams*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402


Edward A. Wallace*
**WEXLER WALLACE, LLP**
55 W Monroe St
Suite 3300
Chicago, IL 60603


Yvonne M. Flaherty*
**LOCKRIDGE, GRINDAL, NAUEN, P.L.L.P**
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2159

Anthony D. Shapiro*
**HAGENS, BERMAN, SOBOL SHAPIRO, LLP**
1301 Second Avenue
Suite 200
Seattle, WA 98101


Todd J. O'Malley
**O'MALLEY & LANGAN**
201 Franklin Avenue
Scranton, PA 18503

*Pro Hac Vice admission will be filed.

## **VERIFICATION**

I verify that the statements made in this Complaint are true and correct to the best of my

knowledge, and belief.  I understand that false statements made herein are subject to the penalties

of 18 PA. C.S, Subsection 4904, relating to unsworn falsification to authorities.

Date: 11/4/2019

Steven J. Latzer
Deputy District Attorney
Montgomery County, PA

Case# 2019-25931-4 Docketed at Montgomery County Prothonotary on 12/11/2019 10:44 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.